SCHOTT, Judge.
Defendants have appealed from a judgment for personal injuries sustained by plaintiffs in a fire at the apartment Mr. Jordan rented from defendant, Palm Apartments. Under the judgment which was pursuant to a jury verdict Mrs. Jordan recovered $25,000, and her husband, $9,000.
Plaintiff rented the apartment from defendant in February, 1970, on a month to month basis pursuant to a written lease agreement which contained the following:
“Said premises have been leased, and are occupied with the understanding and subject to the special condition that the tenant or occupant assumes responsibility for the condition of the premises; the owner or lessor not being liable to any tenant or occupant or to anyone on the premises who derives his right to be thereon from the lessee; as provided by Louisiana Revised Statutes of 1950, Title 9, Section 3221.”
At approximately 5:30 on the morning of January 17, 1973, Mrs. Jordan discovered that the apartment was on fire, whereupon she, her husband and her small child fled from the burning apartment. .She sustained injuries in the process and virtually all of their furniture and personal belongings were destroyed.
Mrs. Jordan sustained first, second and third degree burns on 15% of her body surface. She was hospitalized for treatment following the fire and made a good recovery except that she was left with some keloid scarring for which her physician recommended plastic surgery.
Defendants have specified for our consideration a number of errors which fall into five categories, 1) instructions and interrogatories given to the jury by the trial court, 2) conduct of plaintiffs’ counsel in closing argument and during the course of the trial, 3) various rulings on the admissibility of evidence, 4) the jury’s conclusion that defendant was guilty of' negligence which was the proximate cause of the fire, and 5) the quantum of general damages awarded to Mr. and Mrs. Jordan.
THE TRIAL JUDGE’S CHARGES AND INTERROGATORIES SUBMITTED TO THE JURY
In the lease between the parties they agreed to limit defendant’s liability pursuant to LSA-R.S. 9:3221 which provides as follows:
“The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon by the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.”
Nonetheless, the trial judge instructed the jury as follows:
“The burden is on the plaintiff in a civil case such as this to prove every essential element of his claim by a preponderance of the evidence.
“Negligence is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do. It is, in other words, the failure to use ordinary care under the circumstances in the management of one’s property. “Ordinary care is that care which reasonably prudent persons exercise in the management of their own affairs in order to avoid injury to themselves or their property or other persons or property of others. Ordinary care is not an absolute-term, but a relative one. That is to say, in deciding whether ordinary care was exercised in a given case, the conduct in question must be viewed in light of all the surrounding circumstances as shown by the evidence in the case.
“The mere fact that an accident happened, standing alone, does not, unless otherwise stated, permit the jury to draw the inference that the accident was caused by anyone’s negligence.
“An injury or damage is proximately caused by an act or failure to act whenever it appears from the evidence in the *1123 case that the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.
“This does not mean that the law recognizes only one proximate cause of an injury or damage consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things or the conducts of two or more persons may operate at the same time, either independently or together, to cause injury or damage, and in such a case each may be a proximate cause.
“An owner-lessor is held to strict liability without fault for personal injuries and damages sustained by his tenant or others through the defective condition of the premises. Neither the landowner’s ignorance of the defect nor its latency will defeat the injured person’s recovery. “However, not every defect causing injury is actionable. Only those of a nature reasonably expected to cause injury to persons using ordinary care under the circumstances.
“The injured person’s prior knowledge of the defective condition will not by itself defeat his recovery. However, his contributory negligence may do so, if the injured person was fully aware that the defect was so dangerous that the premises could not be used even with the exercise of due care. That is, if he was aware of the defect causing the injury and it was such as to indicate to a reasonable minded person that use of the defective portion was apparently and eminently dangerous, then recovery is not permitted.
“However, this statutory liability of the owner-lessor may be modified by contract between owner and lessee. LSR 9:3221 reads as follows:
‘The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defects therein to the lessee or anyone on the premises who derives his right to be there from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.’
“If such a clause is in a lease, the owner may contract away liability unless he knew or should have known of the defect, or had received notice thereof and failed to remedy it within a reasonable time. “Such a clause, however, does not mean that you cannot find liability on the part of the owner. Rather, it changes the concept of liability from strict liability, that is, liability without fault, to liability resulting from a finding of fault by you. “Either an act or omission or failure to act on the part of the owner would constitute fault, if you find the defect was one which he did actually know of, or which he should have known of, or of which he had notice but failed to act upon.
“Under a theory of strict liability, a finding of a defective condition subjects the owner to liability. The only defenses to such strict liability are that the defect might not reasonably have been expected to cause the injury, or that the plaintiffs assumed the risk.
“Where the theory is based on fault, you may not find the owner liable simply by finding a defective condition, but must find either actual or constructive knowledge of the defect on the part of the owner and his failure to correct the defect.
“An employer is responsible for the wrongful acts of his employee committed in furtherance of the business of the employer and within the scope of the employment, even though the servant acted contrary to the expressed rules and instructions of his master. In this case, the plaintiffs’ burden is to prove causation or the existence of a defect which caused the injury, by a preponderance of the evidence. This burden may be met either by direct or by circumstantial evidence.
*1124 “Causation may, of course, be proved by circumstantial evidence. In many instances, it can be proved only by such evidence. Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes.
“Under Louisiana law, all legal agreements and contracts have the effect of law between the parties thereto, and both parties are bound by the terms of the contract regardless of whatever harsh consequences are in the contract.”
We agree with defendants that this charge was not an accurate instruction to the jury of the law applicable to the case. We also agree that the charge’s deficiency was compounded in the light of the form of the special verdict required of the jury. This consisted only of the following two questions:
“Was Palm Apts, guilty of negligence?” “Was this negligence a proximate cause of the injury?”
When analyzed the charge contains three separate legal theories of recovery available to plaintiffs. First it instructs the jury on the law of negligence which, in the absence of the lessee’s assumption of the lessor’s liability under R.S. 9:3221, would be applicable to Mrs. Jordan’s claim. C.C. Arts. 2315 and 2322, Hurley v. J. C. Penney Company, 140 So.2d 445 (La.App. 1st Cir. 1962), certiorari denied; Morris v. Hava, 180 So. 216 (La.App.Orl.1938). Second, the charge instructs the jury on the absolute liability of a landlord to his tenant, i. e., Mr. Jordan under C.C. Art. 2695; and third, it contains a quotation of R.S. 9:3221.
Immediately thereafter, the charge continues: “If such a [R.S. 9:3221] clause is in a lease, the owner may contract away liability, etc.” and after further explanation of the effect of R.S. 9:3221 there is the following:
“An owner-lessor is held to strict liability without fault for personal injuries and damages sustained by his tenant or others through the defective condition of the premises. Neither the landowner’s ignorance of the defect nor its latency will defeat the injured person’s recovery.” (Emphasis ours)
The charge then continues with a statement that does contradict the instruction on absolute liability as follows:
“However, not every defect causing injury is actionable. Only those of a nature reasonably expected to cause injury to persons using ordinary care under the circumstances.”
In the first place, the strict liability without fault of Art. 2695 has no application to anyone other than the lessee who in this case is Mr. Jordan. It does not apply to Mrs. Jordan who is considered a third party and not the tenant. Hurley v. J. C. Penney, supra; Morris v. Hava, supra. Her case would be governed by Arts. 2315 and 2322 were it not for R.S. 9:3221. See 17 Tulane L.Rev. 448 (April 1942).
The second serious deficiency we find with the charge is its failure adequately to deal with the legal effect of the lease agreement.
Although the charge contains a quotation of R.S. 9:3221 it is prefaced by the statement that “the .statutory liability of the owner-lessor may be modified by contract . ” The quotation is followed by the statement of the law, “If such a clause is in a lease.”
These instructions are unclear at best and were indeed misleading. C.C. Art. 2669 defines a lease as a contract by which one party gives to the other the enjoyment of a thing at a fixed price. The contract between these parties obviously meets the requirements of this article and was necessarily a contract of lease as a matter of law. The jury should have been so instructed.
Plaintiffs have suggested that the contract was not adequately explained to Mr. Jordan when he signed it so that its validity as a contract was questionable. If the trial judge had felt that this was a bona fide issue in the case appropriate instructions could have been given on the elements necessary for the confection of a contract, but *1125 this would not alter the legal status of that contract as one of lease.
The language of the contract clearly limited the liability of the landlord as provided by R.S. 9:3221. It follows, therefore, that the charge improperly included instructions on absolute liability on the part of the landlord for defects in the premises. It more properly should have included instructions on the elements such as constructive knowledge of the defects alleged.
Under our scheme the jury is the trier of the facts but must be instructed on the law applicable to the case, C.C.P. Art. 1792. Because the absolute liability provided by C.C. Art. 2695 was not applicable, instructions concerning it should not have been included in the charge. Its inclusion and indeed repetition was misleading and confusing. Furthermore, the failure to instruct the jury that this was a contract of lease so that R.S. 9:3221 was applicable was in violation of C.C.P. Art. 1792.
Finally, the problem is compounded by the form of the special verdict required of the jury. C.C.P. Art. 1811 permits the judge to require special verdicts on each issue of fact. The only issue included here was “negligence” on the part of defendants. The real issues in this case were the existence vel non of a defect in the premises, causation thereby, and knowledge of same on the part of defendants. We have concluded that the special verdicts here added to the confusion already created in the minds of the jurors by the charge.
The next question is, what must be done now in the interests of justice? Normally our role on the appellate court is to affirm a judgment if there is evidence of record to support the verdict of the jury. But in this case there is a serious question that the verdict for plaintiffs would not have been returned had the jury been instructed properly as to the law. For that reason we have concluded that reversible error was committed and set aside the judgment.
This case would seem to be open for a remand under these circumstances, but under the prevailing jurisprudence it becomes our duty to decide the case on the record. Couto v. Oms, La., 323 So.2d 128 (1975); Gonzales v. Xerox Corp., La., 320 So.2d 163 (1975).
Plaintiffs’ evidence consisted of the testimony of an expert in chemical engineering, George Pappas, and cross examination of defendants’ expert electrical engineer, George Hero. Pappas testified that the fire originated near a gas heater in the hall. The heater was in an alcove of the apartment and was within six inches of some wood framing around the alcove. Pappas testified that a buildup of heat over several hours of time would have reached, sufficient intensity to ignite this wood in the frames. Plaintiffs produced the building code of the City of New Orleans to show that it was a violation for such a heater to be less than six inches from unprotected wood. At the trial both plaintiffs testified that the heater was on during the night before the fire.
However, both Mr. and Mrs. Jordan seriously contradicted testimony they had given at depositions taken only four months after the fire. They both said then that the wall heater was not on the night before the fire. In order for Pappas’ theory to have any validity whatsoever the heater would had to have been on for a considerable time before enough heat was generated to start the fire.
Later, during cross examination of George Hero, called as an expert witness for defendants, he testified that there was an electrical outlet in the living room which was in violation of the electrical code of the City of New Orleans, and that the fire started in the living room several feet from this wall outlet. At one point in his testimony, Hero stated that this illegal outlet or the equipment connected to it was “a more likely source” of the ignition. While this statement seems to be a positive finding of a defect which might have started the fire, when read in the entire context of his testimony it is confusing and wholly unconvincing.
He testified that he found two outlets in the living room, one 220 volt capacity for an air conditioning unit and the other a 110 *1126 volt outlet. The 220 outlet was defective but would not cause any trouble unless the unit was in operation. There was no testimony to that effect with plaintiffs’ maintaining at trial that it was quite cool necessitating the operation of the heater.
As to the 110 volt outlet, Hero said: “The 110-volt outlet was installed and not inspected as would be required by code, so that is a violation of the code, but that outlet, I do not believe was the cause of the fire. It did not play a part in the fire.”
Plaintiffs’ entire case as to the presence of a defect in the electrical outlet which caused this fire rests on that testimony of Hero which we find to be vague and self contradictory to some extent. No where in the record is there a clear explanation of the nature of the defect and how it caused this fire.
We have concluded that plaintiffs proved that there were at least two defects in the premises in the sense that the location of the heater in proximity to the wood framing around the alcove and the installation of the 110 volt outlet were both violations of the safety code of the City. We are likewise convinced of the possibility that this fire was caused by one of these defects, but the record does not contain proof by a preponderance of the evidence that either of these defects was the cause of the fire.
Because plaintiffs failed to carry their burden of proof the judgment appealed from is reversed and set aside and there is judgment in favor of defendants, Palm Apartments and American Liability Insurance Company, and against plaintiffs, Shirley Robinson, wife of/and Lyonel Jordan, dismissing their suit at their cost.
REVERSED AND RENDERED.
REDMANN, J., concurs with written reasons.
BOUTALL, J., dissenting.