610 So.2d 866 (1992)
Priscilla TILLMAN Individually and as Duly Qualified Natural Tutrix of Her Minor Child, Cedric Tillman,
v.
David JOHNSON.
No. CA 91 1188.
Court of Appeal of Louisiana, First Circuit.
November 20, 1992.
Writ Granted February 5, 1993.
*867 Richard H. Barker, IV, Barker & Boyer, New Orleans, Vincent Dagate, Jr., Authement & Larke, Houma, for plaintiff-appellant, Priscilla Tillman.
Christopher H. Riviere, Pugh, Lanier & Riviere, Thibodaux, for defendants-appellee, Moise D. Johnson, Sr., Kathleen Johnson & Millers Mut. Fire Ins. Co.
Kerry P. Camarata, Thibodaux, for intervenors, Richard A. Thalheim.
Stevens J. White, Bureau of Legal Services, Dept. of Health & Hosp., Baton Rouge, for State of Louisiana & Dept. of Health & Hospitals.
James E. Cazalot, Jr., New Orleans, for James E. Cazalot, Jr. & H. Edward Sherman.
Before LOTTINGER, C.J., FOIL, J., and COVINGTON,[*] J. Pro Tem.
*868 GROVER L. COVINGTON, Judge Pro Tem.
Plaintiff-appellant, individually and as natural tutrix of her minor child, Cedric Tillman, seeks damages for lead poisoning suffered by the minor. She also asks awards for medical expenses and loss of consortium.
Additional parties defendant were added through supplemental pleadings.
A motion for summary judgment, filed by the defendants, was granted by the trial court, whose excellent written reasons we adopt as our own.
"The plaintiff claims that her minor child, Cedric Tillman, was injured as a result of eating lead paint on the premises of the defendants. This matter comes before the Court on a Motion for Summary Judgment. The parties have agreed that the following are the facts. This Court has inserted into the facts the dates of the passage of LSA-R.S. 40:1299.20 et seq. to establish a comprehensive sequence of events.
"The defendant, Kathleen Johnson, acquired the residence at 103-105 Lawrence Street, in 1957. Both she and her husband, David, were made defendants.
"The `Lead Paint Poisoning Prevention and Control Act' passed in its original form in 1972. LSA-R.S. 40:1299.20 et seq.
"The defendants, Robert and Nolan Durocher, acquired the residence at 919 Harrison Street from the estate of their father in 1977.
"In mid December of 1985 Priscilla Tillman and her minor child, Cedric Tillman, moved into the house owned by the Johnsons, as a guest of a friend. The plaintiff claims that the minor child, Cedric, was injured as a result of eating lead paint found in the residence. The Johnsons had no knowledge of the presence of lead paint on or in the residence until notified by the Department of Health. The plaintiff moved out and the problem was corrected immediately.
"In the fall of 1986 Priscilla Tillman and her minor child, Cedric, vacated the residence owned by the Johnsons at 103-105 Lawrence Street.
"In December of 1986 or January of 1987 Priscilla Tillman and her minor child, Cedric, moved into the house belonging to the Durochers, at 919 Harrison Street, as a guest of her mother. The plaintiff alleges that the minor child, Cedric, was again injured as the result of the child eating lead paint found in the residence. The Durochers had no knowledge or notice of the presence of lead paint on or in the residence at 919 Harrison Street, until notified by the Department of Health. When lead paint was discovered the plaintiff moved out and the problem was corrected. All defendants have the same insurer.
"In 1988 the `Lead Paint Poisoning Prevention and Control Act' was amended by amending LSA-R.S. 40:1299.26, .27, & .28 and sections 1299.20 through 1299.25 were repealed in 1989.

THE LAW
"Liability of the owners of residential property under the `Lead Paint Poisoning Prevention and Control Act' is set forth in LSA-R.S. 40:1299.29 stating that `The owner of any residential property shall be liable for all damages caused by his failure to perform the duties required of him pursuant to R.S. 40:1299.26 or R.S. 40:1299.27.'
"The prohibitions in the 1972 version of section 1299.26 as it might apply to residential landlords in the context of this case forbids the knowing application of lead based paint on the interior surfaces of any dwelling and the exterior surfaces of any dwelling to which children under six may be commonly exposed.[1] Since there is no allegation that lead base paint was applied to either of the residences owned by the Durochers or the Johnsons there is no liability imposed upon them under section 1299.26 or .26(a) of the `Lead Paint Poisoning Prevention and Control Act'.
*869 "If there is to be liability imposed on the Durochers or the Johnsons it must come from section 1299.27 of the `Lead Paint Poisoning Prevention and Control Act'. Since the acts complained of occurred before 1988, we must consider the potential liability of the defendants under the 1972 version of section 1299.27 of the `Lead Paint Poisoning Prevention and Control Act'. Under section 1299.27 the landlord may be liable under two separate circumstances. The first is when a child under six or a mentally retarded person resides in the residence and the landlord receives notice of the existence of lead paint. He then has a duty to remove it.[2] The statute clearly requires notice of the lead contamination be given to the owner of the property. It is obvious that since the Johnsons acquired their rental residence in 1967, and they received no notice of the presence of lead paint, they are not liable under the `Lead Paint Poisoning Prevention and Control Act'.[3]
"Secondly, since there was a change of ownership in the premises belonging to the Durochers, after the `Act'; then we must consider whether or not the statute imposes a duty upon them to remove the lead paint from the house as of the date of the change of ownership. It should be noted that in LSA-R.S. 40:1299.27 A. & B.(b) there are dual requirements which trigger the duty of the landlord to remove the lead contamination from a residence. The statute requires that there must be a `... change of ownership and as a result thereof a child or children under six years of age or mentally retarded persons shall reside therein ...' (Emphasis Supplied).[4] It appears that the Durochers meet the first of the requirements in that ownership changed. They do not meet the second requirement and that is as a result of the change of ownership the dwelling became inhabited by a child under six or a mentally retarded person. There is no connexity between the change of ownership and the presence of the child, Cedric Tillman, in the residence. Further, the statute carries a dual caveat in that it is to be `... strictly construed and enforced so as to best protect the safety of residents of such dwellings.'[5] Strict construction of the statute requires that it have a narrow construction. Under the rules of strict construction the Courts are not free to find a remedy by implication.[6] When a requirement of narrow construction is coupled with the caveat that it be enforced for the safety of the residents we must not conclude that there is conflict in the statute. The Court must consider the statute as a whole and it cannot be presumed that only clauses and phrases were enacted. We must find a sensible way to read this act of the Legislature. The only sensible way to *870 read the statute without conflict is that the statute is to be narrowly construed and vigorously enforced.
"Therefore, the Durochers do not incur liability under the statute without having notice of the lead contamination. They had no notice of the contamination and therefore have no liability under the statute.
"We must now explore the potential liability of the Johnsons and the Durochers under other avenues. The Civil Code provides several avenues for liability. They are Louisiana Civil Code Articles, 660 (formerly 670), Article 2322, Article 2695, Article 2315, & Article 2316.
"Articles 660, 2322 & 2695 seem to be commonly lumped together. This seems to be because they relate to one touchstone of liability, ownership of the premises.[7]
"Louisiana Civil Code Article 660 provides that: `The owner is bound to keep his buildings in repair so that neither their fall nor that of any part of their materials may cause damage to a neighbor or to a passer-by. He is answerable for damages caused by his neglect to do so.' This article by its terms applies only to neighbors and passers-by.[8] Thus, defendants are not liable under this article.
"Louisiana Civil Code Article 2322 provides that: `The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.' The ruin contemplated by this article is apparently the actual fall or collapse of the building, some part of the building must break or give way.[9] At any rate, the falling paint chips are not the ruin contemplated by this article.[10] There seems to be a more modern view of ruin as contemplated by this article; but even that falls short of lead paint. The more modern view of liability under this article seems to contemplate:
1. There be a building.
2. The defendant must be its owner.
3. There must be a `ruin' caused by a vice in construction or a neglect to repair, which occasions the damage to be recovered. Olsen v. Shell Oil Company, 365 So.2d 1285 (La.1978); Charpentier v. St. Martin Parish School Bd., 411 So.2d 717 (La.App. 3rd Cir.1982).
However none of these cases espousing a more modern view overrule the two Louisiana lead paint cases, Davis v. Royal-Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1970); Montgomery v. Cantelli, 174 So.2d 238 (La.App. 4th Cir.1965).
"Finally, we must contemplate Article 2695 as a potential source of liability. Article 2695 provides that: `The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.' Both of the Louisiana lead paint cases Davis v. Royal-Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1970); Montgomery v. Cantelli, 174 So.2d 238 (La.App. 4th Cir.1965) fail to contemplate this article. This may be because of the series of cases which hold that this article runs in favor of the *871 lessee alone and not in favor of his family.[11] There are cases to the contrary, which allow the wife and family of the lessee to recover.[12] It would seem that the cases that limit the responsibility of the lessor to the lessee, alone, and not to the family of the lessee are the majority view and the most recent view of the 1st Circuit Court of Appeals;[13] the Circuit that binds this Court. For this Court to expand the lessors liability in this case would be for it to overrule the 1st Circuit Court of Appeals. If this had been a case of a suit by a wife for injuries to herself, it would seem that the more modern and better view would be to allow the action by the wife. However, the child in this case was at best the guest of his mother's friend at the residence owned by the Johnsons and the guest of the grandmother when the child was at the residence owned by the Durochers.
"This leaves the possibility of liability under Article 2315 or 2316 of the Louisiana Civil Code. These articles contemplate liability through a breach of duty or neglect. What is the breach of duty or neglect in this case? The duty is set out by statute in LSA-R.S. 40:1299.27. This Court has already concluded that this duty has not been breached. The Montgomery case has concluded that the conduct of a child eating paint is not something that the landlord could anticipate. Montgomery v. Cantelli, 174 So.2d 238 (La.App. 4th Cir. 1965).
"Other jurisdictions seem to be split on the issue of the liability of the landlord for the ingestion of lead paint by minors present on the leased premises.[14]
"If liability had been imposed on all houses containing lead paint it would have removed from the rental housing market a large number of older rental properties. This would have left many of the poor, with young children, without available housing. The legislation is simply exposing landlords to liability in a gradual manner so that large numbers of older rental properties are not suddenly removed from the rental market place.
"The policy in this matter has been set by the Legislature and they require notice before liability. There has been no notice to the landowners in this matter, consequently no liability, and the petition of the plaintiff is dismissed at her cost.
"The plaintiff in this matter is a pauper. The cost of trying this lawsuit, including the expert fees would be more than the average man earns in a year in the State of Louisiana. The plaintiff deserves, at the *872 least, to launch or abandon this lawsuit from a stable legal platform."
The judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
LOTTINGER, C.J., concurs and assigns written reasons.
FOIL, J., dissents and assigns reasons.
LOTTINGER, Chief Judge, concurring.
I concur in the result and assign the following reasons.
A review of the record, especially the transcript of the hearing held on the motion for summary judgment, reveals that there is no genuine issue for a fact finder to weigh or resolve. All pertinent facts were either admitted in the defendants' pleadings and depositions, or by the plaintiff's attorney at the motion hearing. The defendants had lead paint on their premises, they had no knowledge of its existence until notified by the Department of Health and Human Resources (DHHR), they removed it in compliance with DHHR's directions, and they both knew that Ms. Tillman and her children were present in the apartments.
This latter fact was the only one causing concern for plaintiff who attempted to have Ms. Tillman testify at the motion hearing. Upon learning that this was an admitted fact, and that plaintiff's testimony could add nothing to the facts alleged and admitted, plaintiff dropped her efforts to raise any facts in opposition to those already presented.
This, along with plaintiff's argument that La.R.S. 40:1299.27 creates absolute liability for lead paint, an apparent concession that La.Civ.Code article 2322 does not create liability for lead paint, counters any suggestion that there exists a genuine issue of material fact, under La.Civ.Code article 2317, as to whether lead paint presents an unreasonable risk of harm. Considering the last sentence of the article 2317, neither defendants' liability for the lead paint can be considered under this article alone, but must be considered in light of article 2322, which article requires a consideration of whether the paint can constitute ruin, etc. It is clear that plaintiff has failed to raise a genuine issue of material fact, and that summary judgment is an appropriate means of disposing of this case. See La.Code Civ.P. article 967, paragraph 2. Therefore, we are left to examine the trial court's application of the law. The plaintiff urges several theories of liability, none of which the trial court accepted. I agree.
It is apparent that La.Civ.Code article 660, by its terms does not apply to Cedric Tillman who was neither a neighbor nor a passer-by, and because no part of the building or its materials fell upon him. While one might argue that the paint is one of its materials, I believe that this is a specious argument when one examines the language of the articles in the same section of the Code. It contemplates boards and bricks.
Next, articles 2317 and 2322 must be examined. As noted above, these articles must be read together. When doing so, it becomes clear that these defendants can only be held liable for ruin in their buildings caused by their neglect to maintain the premises, or when the ruin results from a vice in construction. In this context, Montgomery v. Cantelli, 174 So.2d 238 (La.App. 4th Cir.1965), only cryptically dismissed a similar action based upon article 2322, but without going so far as to explicitly state that peeling paint is not ruin within the meaning of the article.
However, in controlling precedent, we find just such a statement. The supreme court explicitly stated that peeling paint is not ruin within the meaning of article 670 (now 660) or 2322. Davis v. Royal-Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1970). In fact, the court went so far as to state that "[w]here it is alleged, as here, that the injury is to a third person [Cedric] lawfully on the premises from a dangerous condition which the lessor has permitted to exist, then the appropriate basis for the decision is articles 2315 and 2316." Id. 242 So.2d at 842. Thus, there can be no recovery by plaintiff under articles 660, 2317, and 2322.
*873 Recovery was also predicated on La.Civ. Code article 2695. The language of this article restricts its application to landlord and tenant. It is a warranty action based upon contract, which requires privity between the parties. Cedric Tillman obviously does not fit within the contemplation of this article.
La.Civ.Code articles 2315 and 2316, as correctly pointed out in the trial court's excellent written reasons, contemplate the breach of a legal duty. Plaintiff points to La.R.S. 40:1299.26-1299.29, the "Lead Paint Poisoning Prevention and Control Act" and a Newsweek article in support of her contention that these defendants breached duties owed to her and her child.
Section 1299.26 of the Act applies to the use and sale of lead based paint in Louisiana. It does not apply to this case as there have been no allegations that the defendants illegally used such paint. Section 1299.27 of the Act would apply were it not for the fact that the defendants have complied with the orders of the DHHR. This is because Section 1299.29 imposes a duty to comply with such orders, or liability will attach. Where there is compliance, there can be no liability under the Act.
This does not address the separate question of whether the Act creates a duty, under La.Civ.Code articles 2315 and 2316, to remove lead based paint from all structures in which children reside. I think it does not. Section 1299.27 of the Act creates two distinct duties in paragraph A. The first would require that landlords, such as in this case, remove lead based paint after notification from the DHHR when it has been determined that there are "dangerous levels of lead" as defined in a now-repealed section. Leaving aside any questions as to the effect of this repealed standard, we can conclude, in this case, that this duty has not been violated. Each landlord, in depositions and affidavits, has stated that they were unaware of the presence of the lead paint. And, once made aware of it, they removed it.
Turning to the second duty in paragraph A, we see that it contemplates a situation in which, as a result of a change of ownership, a child will reside in the structure. The "as a result of a change of ownership" is the same as the "but for" tort test. "But for" the change on ownership, a child under six would not be residing therein. I can conceive of only two situations in which such a duty will arise: (1) where a new landlord takes an "adults-only" building and converts it to one in which children will now be allowed to reside, and (2) where a landlord, purchasing a building, contemporaneously negotiates a lease with a family having a child under six years of age. All other situations can be covered, and children protected, by the first duty in paragraph A which allows a parent to have DHHR test the premises and order paint removed.
However, it has not been alleged that either landlord here has breached this second duty. Ms. Tillman moved into the premises as a guest unbeknownst to the landlords who only later discovered that she had taken up residence there. Further, in the one instance in which there was a change of ownership, in the Durocher's apartment, there was already a childless tenant there who had been there for many years, and who would continue to reside there for many years after the building was inherited by the Durocher brothers. And even when a new tenant moved into the apartment, it was not Ms. Tillman and her children, but her mother who was the new tenant. Thus, the second duty in paragraph A has not been breached.
Plaintiff argued, at the motion hearing, that there is a third duty under the section, in the unnumbered paragraph following paragraphs B(a) and (b), creating absolute liability merely for having lead paint in the premises. I disagree. This paragraph reads slightly differently than paragraph A, but it appears to be no more than an unartful reiteration of paragraph A. I come to this conclusion because the paragraph begins by referring to "[t]his duty..." which can only be that referred to above, removal of the offending paint, whether as a result of either of paragraph A's specified situations.
*874 Therefore, without a violation of either of Section 1299.27's duties, plaintiff would be relegated to proving that a general duty to test all of one's property or properties for lead paint and remove it would exist under Civil Code articles 2315 and 2316, and that anyone who has not yet done so is liable for any damages the lead paint may have caused. As pointed out in the trial court's written reasons, this would lead to the wholesale removal of rental properties from the market. It would also blindside many landlords who, unlike these defendants, do not know that there is a child residing in their buildings or who do not even have a child residing there, but who might visit and ingest lead. This result would be too onerous for property owners, and must have resulted in the compromise evident in the Act which requires removal only in two instances, one of which occurred here, and which resulted in the proper removal of the lead paint. Therefore, I conclude that the legislature by the enactment of the Lead Paint Poisoning Prevention and Control Act has confined any duty to remove and or be liable for the results of lead based paint to the Act.
Putting aside whether such a duty should exist, defendants deny any knowledge of lead based paint in their premises. Plaintiff does not counter this denial. Further, plaintiff does not counter the motion for summary judgment by presenting any facts in affidavits, depositions, or answers to interrogatories which would create a genuine issue of material fact that the defendants should have known that lead based paint was in their premises.
FOIL, Judge, dissenting.
I respectfully dissent.
Plaintiff asserts that defendants are liable for damages sustained by her son from his exposure to lead-based paint in the rental premises. She bases liability on negligence and under Civil Code articles 2317, 2695, 2322 and 660. The trial court found that as a matter of law, defendants were not liable in negligence, or under La.Civ. Code arts. 2322, 660 and 2695. It did not address whether plaintiff could establish liability under La.Civ.Code art. 2317. Because material issues of fact exist under the negligence and 2317 theories of recovery, summary judgment was inappropriate.
Under either a negligence or 2317 strict liability theory against the owner of a thing, the plaintiff must prove (1) the thing which caused the damage was in the custody of the defendant; (2) the thing contained a "defect," that is, it created an unreasonable risk of harm to the plaintiff; and (3) the defective condition of the thing caused the plaintiff's injuries. Oster v. Department of Transportation & Development, 582 So.2d 1285, 1288 (La.1991). The only difference between the theories is the proof of the defendant's knowledge. In order to establish negligence, the plaintiff must prove that the defendant knew or should have known of the defect. However, under a strict liability theory, a plaintiff need not prove that the defendant knew or should have known of the defect. Id. at 1288.
In support of their motion for summary judgment, defendants submitted affidavits in which they attested that they were not aware of the existence of the lead-based paint in their properties until notification by DHHR of that fact. The trial court found that plaintiff could not prove the knowledge element necessary to recover in negligence, finding that the owners were not actually aware of the lead contamination. The court also cited the case of Montgomery v. Cantelli, 174 So.2d 238 (La.App. 4th Cir.), writ denied, 247 La. 1082, 176 So.2d 143 (La.1965), in support of the conclusion that the scienter element was lacking. In Montgomery, the court found that a plaintiff whose son had ingested lead-based paint flakes, thereby contracting lead poisoning, did not have a cause of action in negligence against the landlord because the landlord could not have reasonably foreseen that a child would pick paint flakes from a door and eat them.
Plaintiff suggests, however, that since the time the Montgomery case was decided, the state of the knowledge regarding lead-based paint and the harm it poses to young children who may ingest it has changed. She points to the action of the *875 Louisiana Legislature in enacting the "Lead Paint Poisoning Prevention and Control Act," La.R.S. 40:1299.26 et seq., as evidence of the awareness of the dangers presented to young children by lead-based paint. That act requires that the owner of a residential premises in which lead-based paint has been used, to remove, cover it or make it inaccessible whenever the premises undergoes a change of ownership and a child under the age of six will reside therein. The Lead Paint Poisoning Prevention and Control Act was enacted in 1972. Additionally, plaintiff points to a 1991 publication in Newsweek entitled "Lead and Your Kids," which outlines the prevalence, as well as the seriousness of the threat of harm posed to young children by lead-based paint in homes where the paint is peeling or chipping, or which have lead dust in them.
A material issue of fact exists as to whether the landlords should have known of the existence of lead in the paint and the danger it posed to a young child. This determination would be made by examining the state of knowledge as to the existence of lead in paint and the risk of harm it posed to young children in 1985 or 1986, the time at which young Cedric was exposed to lead-based paint in the rental units. Plaintiff should be given the opportunity to present evidence on the constructive knowledge issue. In addition to offering evidence on the state of knowledge, plaintiff should be allowed to offer evidence on the extent to which the paint was peeling and chipping, since such would be relevant to the landlord's duty to properly maintain the rental premises. See Davis v. Royal-Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1970), in which the Court ruled that a plaintiff, who sued her landlord in negligence for damages after her children contracted lead poisoning from eating paint flakes, had not met her burden in establishing that the landlord was negligent in maintaining the premises. The evidence showed that every time the occupancy of the rental unit changed, the landlord had the walls cleaned, all loose paint and plaster scraped from the walls, and he would repaint the unit in whole or in part with non-lead paint.
Further, plaintiff need not prove knowledge to recover under a strict liability theory. A material factual issue as to whether the lead-based paint presented an unreasonable risk of harm to young Cedric, for the purposes of La.Civ.Code art. 2317 is presented by this case. The unreasonable risk of harm criteria under 2317 involves a myriad of considerations, including balancing the likelihood and the magnitude of the harm against the utility of the thing. The balancing test involves a consideration of social, economic and moral factors, including the cost to the defendant to avoid the risk and the social utility of the plaintiffs' conduct at the time of the accident. Oster v. Department of Transportation & Development, 582 So.2d 1285, 1288-1289. Whether the lead-based paint presented an unreasonable risk of harm to plaintiff's son can only be determined after a consideration of all of the circumstances of this case, which plaintiff should be afforded the opportunity to present in a trial on the merits.
Because material issues of fact exist on the constructive knowledge and the "unreasonably dangerous" elements of liability, summary judgment is inappropriate to dispose of this case. Therefore, I would reverse the action of the trial court in dismissing this suit on a motion for summary judgment, and remand the case to the trial court to conduct a trial on the merits.
NOTES
[*] Judge Grover L. Covington, retired, is serving as judge pro tem by special appointment of the Louisiana Supreme Court.
[1] "The duties required by sections 1299.26 are limited since in 1972, LSA-R.S. 40:1299.26 was repealed and redesignated as LSA-R.S. 40:1299.26(a); and then replaced in 1988 by LSA-R.S. 40:1299.26. The 1988 amendment of LSA-R.S. 40:1299.26 does not effect this case.
[2] "2. `A. Whenever a child or children under six years of age or mentally retarded person resides in any residential premises in which any paint, plaster or other accessible materials contain dangerous levels of lead as defined pursuant to R.S. 40:1299.24, after notification by the director or his representative, the owner shall remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age or mentally retarded persons. Whenever any such residential premises containing said dangerous levels of lead undergoes a change of ownership and as a result thereof, a child or children under six years of age or mentally retarded persons will become a resident therein, the new owner shall remove or cover said paint, plaster, or other material so as to make it inaccessible to such children or mentally retarded persons.' LSA R.S. 40:1299.27 A. The duties of a landlord are also set out in the second paragraph of Section B.(b) of R.S. 40:1299.27 provided relative to the duty of a landlord to provide a lead paint free house in pertinent part that: `This duty shall apply to every owner of residential premises whenever a child or children under six years of age or mentally retarded persons reside therein or whenever such premises undergoes a change of ownership and as a result thereof a child or children under six years of age or mentally retarded persons shall reside therein, whether or not his premises have been inspected pursuant to R.S. 40:1299.24 or otherwise. This section shall be strictly construed and enforced so as to best protect the safety of residents of such dwellings.'
[3] "LSA-R.S. 40:1299.20 et seq.
[4] "LSA-R.S. 40:1299.27 A. & B.(b).
[5] "LSA-R.S. 40:1299.27 B.(b).
[6] "Gibbs Const. v. Dept. of Labor, 540 So.2d 268 (La.1989).
[7] "See PATTERN JURY INSTRUCTIONS IN LOUISIANA CIVIL CASES WITH ANNOTATIONS AND COMMENTS, VOLUME ONE by H. Alston Johnson III, Professor of Law, Copyright C 1978 H. Alston Johnson III. All rights reserved, at page 374.
[8] "Davis v. Royal-Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1970); Montgomery v. Cantelli, 174 So.2d 238 (App. 4th Cir.1965); Ciaccio v. Carbajal, 142 La. 125, 76 So. 583 (1917); McConnell v. Lemley, 48 La.Ann. 1433, 20 So. 887 (1896).
[9] "Davis v. Royal-Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1970); Montgomery v. Cantelli, 174 So.2d 238 (La.App. 4th Cir.1965); Guidry v. Hamlin, 188 So. 662, 664 (La.App.Orl. 1939).
[10] "Davis v. Royal-Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1970); Montgomery v. Cantelli, 174 So.2d 238 (La.App. 4th Cir.1965).
[11] "Duplain v. Wiltz, 194 So. 60 (La.App.Orl. 1940); Jordan v. Palm Apartments, 353 So.2d 1120 (La.App. 4th Cir.1977), writs granted 355 So.2d 263. (La.1978). It appears that the writ was granted and then nothing happened. It was writ of review. Shepards refers you back to 353 So.2d 1120 the original case. Hurley v. J.C. Penney Co., 140 So.2d 445 (La.App. 1st Cir. 1962); Morris v. Hava, 180 So. 216 (La.App.Orl. 1938).
[12] "Crawford v. Magnolia, 4 So.2d 48 (La.App. 1st Cir.1941).
[13] "Dye v. Kean's, 412 So.2d 116, 119 (La.App. 1st Cir.1982); Hurley v. J.C. Penney Co., Inc., 140 So.2d 445 (La.App. 1st Cir.1962); Weiland v. King, 281 So.2d 688 (La.1973); Albritton v. J.C. Penney Co., Inc., 385 So.2d 549 (La.App. 3rd Cir.1980); Reed v. Ramsay, 355 So.2d 618 (La. App. 4th Cir.1978); Jordan v. Palm Apartments, 353 So.2d 1120 (La.App. 4th Cir.1977).
[14] "See 43 ALR3rd 1261 et seq.; 48 ALR4th 633-649 [48 ALR4th 638-649 (1992 Supp.) ], Section issued September, 1990. Brown v. Marathon Realty, Inc., 170 A.D.2d 426, 565 N.Y.S.2d 219 (2 Dept.1991), No liability without actual or constructive notice to landlord; Ankiewicz v. Kinder, 408 Mass. 792, 563 N.E.2d 684 (1990) held that `Lead Paint Prevention Act' imposed tort liability on landlords; Hardy v. Griffin, 41 Conn.Supp. 283, 569 A.2d 49 (1989); Strict Liability imposed by statute; Garcia v. Jiminez, 184 Ill.App.3d 107, 132 Ill.Dec. 550, 539 N.E.2d 1356 (2 Dist.1989) held that landlord was not under duty to foresee that paint chips created a dangerous condition making injury to a young child foreseeable; Bencosme v. Kokoras, 400 Mass. 40, 507 N.E.2d 748 (1987) held that a residential property owner is strictly liable for injuries by statute; Coalition To End Lead Poisoning v. Koch, 138 Misc.2d 188, 524 N.Y.S.2d 314 (1987); Fishkind Realty v. Sampson, 306 Md. 269, 508 A.2d 478 (1986); Franklin v. Krumanocker, 114 A.D.2d 611, 494 N.Y.S.2d 214 (3 Dept.1985); Ford v. Goffstein Realty, Inc., 687 S.W.2d 195 (Mo.App.1984); Norwood v. Lazarus, 634 S.W.2d 584 (Mo.App.1982); Holmes v. District of Columbia, 418 A.2d 142 (D.C.App.1980); copies of the above cited cases are attached as appendix A.