## RAFAEL BENCOSME & others[1] *vs*. NICHOLAS KOKORAS & another.[2]

Essex.  February 4, 1987. — May 18, 1987.

Present: WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Lead Poisoning Prevention. Evidence,* Failure to produce witness. *Practice, Civil,* Instructions to jury, Judgment notwithstanding verdict, Note-taking by jurors. *Damages,* Lead poisoning case.

Owners of a residential property were liable under G. L. c. 111, § 199, without proof of negligence, for injuries sustained by two children under six years of age who ingested lead-based paint chips and other particles which the owners had failed to remove from the premises as required by c. 111, § 197. [43-44]

In a civil action in which there was no indication that a certain witness, although apparently available to testify and under the defendants' control, knew anything bearing on the issues at trial, the judge's instruction to the jury that the defendants were not obliged to produce any witnesses, inferentially and adequately told the jury that the plaintiffs' attorney had improperly asked them to consider why the defendants had not produced the witness to support their testimony and to contradict the plaintiffs'. [44]

There was no merit to the contention by defendants in a civil action that the judge erred in permitting a juror to have notes in the jury room, where the judge instructed the jury that no greater persuasive weight should be given a juror with notes than one without. [44]

In an action against the owners of a residential property under G. L. c. 111, § 199, for injuries sustained by two young children who had ingested lead-based paint which the defendants had failed to remove as required by c. 111, § 197, a claim that excessive amounts had been awarded to the children's mother for their medical expenses could not properly be raised by a motion for judgment notwithstanding the verdict and, in any event, verdicts of $10,000 and $12,000 were warranted by evidence in the

[1] Carey Bencosme and Candida Bencosme, the mother of Rafael and Carey.

[2] George Kokoras.

form of hospital records and testimony of physicians and psychologists as to past and anticipated future services. [44-45]

In an action against the owners of a residential property under G. L. c. 111, § 199, for injuries sustained by two young children who had ingested lead-based paint which the defendants had failed to remove as required by c. 111, § 197, it was a question for the jury whether the defendants did "not satisfactorily correct or remove [the] dangerous conditions" once they were notified of a dangerous level of lead on the leased premises, and the evidence did not require the jury, as a matter of law, to find the defendants liable under § 199 for punitive damages in an amount three times the actual damages. [45]

CIVIL ACTION commenced in the Superior Court Department on August 9, 1979.

The case was tried before *Gordon A. Martin, Jr., J.*, sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Nicholas J. Decoulos* for the defendants.

*Martin Kantrovitz* (*Maureen Bairos* with him) for the plaintiff.

*Jeffrey Petrucelly,* for Massachusetts Tenants Organization & another, amici curiae, submitted a brief.

WILKINS, J. We conclude that, without proof of negligence, an owner of residential property is liable under G. L. c. 111, § 199 (1984 ed.), for injuries sustained by a child under six years of age who ingested lead-based paint or other material which the owner failed to remove from those premises as required by G. L. c. 111, § 197 (1984 ed.). The plaintiffs presented their case solely on the theory that the landlords' failure to remove paint, plaster, and other material with dangerous levels of lead established liability for injuries sustained by two young children who ingested paint chips and other particles and suffered the effects of lead poisoning.

We agree with the trial judge's determination that an owner of premises may be liable under § 199 without proof either that the owner knew there were materials containing dangerous levels of lead on the premises or that the owner was negligent in not removing the offending materials. Section 199, which

is set forth in full in the margin,[3] provides for strict liability, that is, liability without proof of fault beyond the owner's noncompliance with statutory requirements for the removal of materials containing dangerous levels of lead.[4]

We need not set forth fully the evidence supporting the plaintiffs' case. Rafael was eleven months old in March, 1973, when he, his mother, and older sister came from the Dominican Republic to live with his father in an apartment in Peabody in a building owned by the defendants. The relevant statutes concerning the removal of lead-based paint and other materials were then in effect. See St. 1971, c. 1081, § 3. In late November, 1973, Carey, the other minor plaintiff, was born. Rafael and Carey lived in the apartment until September, 1975. During that time the two boys ingested lead and sustained lead poisoning. There was evidence that paint, paint chips, plaster chips, and dust from the ceiling in the apartment had dangerous levels of lead. There was also evidence that the boys had current disabilities caused by lead poisoning and had a risk of future disabilities.

The jury returned verdicts for Rafael ($75,000) and Carey ($100,000), and verdicts awarding their mother damages for medical bills. The jury determined, however, that the owners had satisfactorily corrected or removed the dangerous condition

---

[3] General Laws c. 111, § 199, inserted by St. 1971, c. 1081, § 1, reads: "The owner of any residential property shall be liable for all damages caused by his failure to perform the duties required of him pursuant to subsection (a) of section one hundred and ninety-six or section one hundred and ninety-seven.

"The owner of any residential property who is notified of a dangerous level of lead in paint, plaster or other material present upon his premises pursuant to section one hundred and ninety-four, and who does not satisfactorily correct or remove said dangerous conditions shall in addition to the provisions of the preceding paragraph be subject to punitive damages, which shall be treble the actual damages found."

[4] General Laws c. 111, § 197, inserted by St. 1971, c. 1081, § 1, requires the owner of residential premises to remove or cover paint, plaster, or other material so as to make it inaccessible to children under six years of age whenever such a child resides in the premises. Section 197 further describes how removal or covering shall be conducted. The obligation to remove or cover offending material is to be enforced whether or not the premises have been inspected pursuant to G. L. c. 111, § 194, or otherwise.

when they were notified of it. Consequently, the defendants were not additionally liable under § 199 for punitive damages in an amount three times the actual damages.

1. The defendants argue that their obligations under § 199 are not based on strict liability but rather require proof of negligence or noncompliance with a remedial order under § 194. Thus, they say, no duty arose until they knew or should have known of the dangerous condition. The defendants contend that their motion for directed verdicts should have been allowed and that the judge erred in instructing the jury that the plaintiffs did not have to prove that the owners were aware of the presence of lead.[5]

We are not dealing here with the question whether this court should adopt a common law principle that would impose liability without proof of fault. The issue is whether the Legislature has created such a rule in § 199. We think it has.

The language of § 199 virtually compels the conclusion that neither negligence nor knowledge of the risk is an element of liability under the first paragraph of § 199. An owner "shall be liable for all damages caused by his failure to perform the duties required of him pursuant to . . . [§ 197]." G. L. c. 111, § 199. Section 197 imposes a duty to remove or cover lead paint, plaster, and other material when a child under six years of age resides in the premises. See *Commonwealth* v. *Racine*, 372 Mass. 631, 637 (1977). Neither section imposes that duty only if the owner knew or should have known of the risk or only if the premises had been inspected and a compliance order had been issued. The last paragraph of § 199 imposes punitive damages when an owner, notified pursuant to § 194 of the dangerous level of lead in paint or other material, does not satisfactorily correct or remove the dangerous condition. The implication is clear that liability for compensatory damages under the first paragraph of § 199 does not require such a notice. We think it follows that the first paragraph of § 199 was not in-

---

[5] Even on the defendants' theory that instruction would be correct. Proof that the defendants reasonably should have known of the presence of lead would suffice.

tended to require proof of negligence and that it should be read and applied literally. There is nothing in the legislative history of St. 1971, c. 1081, that indicates that the literal reading we give to §§ 197 and 199 was not intended.

2. The defendants object that the judge did not instruct the jury that a portion of the plaintiffs' closing argument was improper. In his closing plaintiffs' counsel asked the jury to consider why the defendants had not produced their cousin Eva as a witness to support their testimony and to contradict the plaintiffs'. There was conflicting testimony as to whether she collected rent from tenants and relayed their complaints. Although it might be reasonably inferred that she probably was available to testify and was under the defendants' control, there is no indication that she knew anything bearing on the issues at trial. Thus it was not clear that the defendants naturally would be expected to call her as a witness. See *Grady* v. *Collins Transp. Co.,* 341 Mass. 502, 506 (1960). Cf. *Commonwealth* v. *Franklin,* 366 Mass. 284, 292-293 (1974) (judge's charge that inference against criminal defendant could be drawn from his failure to call witnesses upheld). In such a situation, comment on Eva's absence was not warranted. The judge told the jury so but only in general terms. He gave an instruction that the defendants were not obliged to produce any witnesses. He did not explicitly tell them that the plaintiffs' argument was improper. He did so, however, inferentially and adequately.

3. The defendants' abbreviated argument that the judge erred in permitting a juror to have notes in the jury room is meritless. The judge instructed the jury appropriately that no greater weight should be given a juror with notes than one without. See *Commonwealth* v. *Wilborne,* 382 Mass. 241, 253 (1981).

4. The defendants contend that the judge should have allowed their motion for judgment notwithstanding the verdicts because there was no proof of special damages, such as the amount of past and future medical expenses. No evidence of the amount of any medical bill was introduced. This argument goes only to the mother's counts for medical expenses. Hospital records and the testimony of physicians and psychologists as to past

and anticipated future services permitted the jury to use their judgment to award more than nominal amounts on the counts for medical expenses. Any claim that the amounts awarded were excessive could not properly be raised by a motion for entry of judgment notwithstanding the verdict. In any event, verdicts of $10,000 and $12,000 respectively, were warranted.[6]

5. The plaintiffs' appeal is without merit. The evidence did not require the jury, as a matter of law, to return verdicts for the plaintiffs on their treble damage claims. It was a jury question whether the defendants did "not satisfactorily correct or remove [the] dangerous conditions" (G. L. c. 111, § 199, second par.) once they were notified of a dangerous level of lead on the leased premises.

*Judgments affirmed.*

---

[6] The defendants do not argue error in the denial of their motion for a new trial which was combined with their motion for judgment notwithstanding the verdicts.