**Imira WILLIAMS–WARD, Plaintiff,**

v.

**LORENZO PITTS, INC., Defendant.**

**Civ. A. No. 93–11703–PBS.**

United States District Court, D. Massachusetts.

Oct. 18, 1995.

Chris A. Milne, Rainer and Rainer, Boston, MA, for Plaintiff.

Marsha K. Zierk, Diane C. Tillotson, Hemenway & Barnes, Boston, MA, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SARIS, District Judge.

### *INTRODUCTION*

Plaintiff, Imira Williams–Ward, a minor girl,[1] brings this action against the defendant, Lorenzo Pitts, Inc., for injuries allegedly sustained as a result of her ingestion in 1987 of lead paint in an apartment building ("the premises") owned by the United States Department of Housing and Urban Develop-

ment ("HUD") and managed by the defendant.

The four count complaint filed in Suffolk Superior Court in July of 1993 asserts claims of strict liability under the Massachusetts Lead Poisoning Prevention and Control Act ("Massachusetts Lead Paint Act"), Mass. Gen.L. ch. 111, §§ 196 and 197, resulting in breach of the implied warranty of habitability and covenant of quiet enjoyment (Count I); violation of Mass.Gen.L. ch. 111, § 199 for failure to remedy the dangerous level of lead paint (Count II); violation of Mass.Gen.L. ch. 93A (Count III); and negligence (Count IV). The complaint does not allege any violation of federal law; nor does it name the United States or any federal agency as a defendant.

On or about August 3, 1993 the defendant removed the case to federal court stating that the Federal Lead–Based Paint Poisoning Prevention Act (FLPPPA), 42 U.S.C. §§ 4821–4846, the National Housing Act, 12 U.S.C. § 1701 *et seq.*, and federal common law pre-empt the plaintiff's claims. Waiving her warranty and quiet enjoyment claims, plaintiff moves this court to vacate the defendant's notice of removal and remand the action to the Superior Court. In the alternative, the plaintiff seeks partial summary judgment as to Counts I and II of the complaint, and the imposition of sanctions upon the defendant pursuant to Fed.R.Civ.P. 11. The defendant urges this court to retain jurisdiction over the entire case, and has also moved for summary judgment with respect to all remaining claims.

After hearing, the Plaintiff's Motion to Vacate Notice of Removal, Motion for Rule 11 Sanctions, and Cross–Motion for Partial Summary Judgment are **DENIED.** Defendant's Motion for Summary Judgment is **DENIED** with respect to Count IV of the plaintiff's complaint alleging negligence, and **ALLOWED** with respect to the remaining claims.

### I. *PLAINTIFF'S MOTION TO VACATE NOTICE OF REMOVAL*

Plaintiff's motion to vacate notice of removal comes almost two years after the case

---

**1.** Carlita Ward, Plaintiff's mother, has been dismissed without objection, for failure to prosecute, and for violations of her obligations under the rules of discovery in both her individual and "next-friend" capacities. Her claim is also time-barred under Mass.Gen.L. ch. 260, § 2A. Accordingly, a guardian will be appointed to represent the minor.

was initially removed. The original complaint filed in state court asserted claims under the covenant of quiet enjoyment and implied warranty of habitability. Having waived these claims, the plaintiff now seeks remand of her remaining claims.

■ As long as this case was properly removed to federal court, this court has jurisdiction, "whether or not the basis of removal, i.e., the federal claim, thereafter remains." *Ching v. MITRE Corp.*, 921 F.2d 11, 13 (1st Cir.1990). The propriety of removal is determined by examining the complaint at the time the notice of removal was filed. *Id.* Thus, the plaintiff's subsequent waiver of any and all federal claims will not defeat this court's jurisdiction. *Id.* at 13. Rather, assuming all federal claims have been eliminated, it is within this court's discretion whether or not to remand the remaining state claims. *Id.*

■ Pursuant to 28 U.S.C. § 1441(b), a defendant can remove "[a]ny action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution ... or laws of the United States". For purposes of removal, federal question jurisdiction exists where the complaint establishes either that federal law creates the cause of action, or that the plaintiff's right to relief under state law requires resolution of "a substantial question of federal law." *Franchise Tax Board v. Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983); *Commonwealth of Massachusetts v. V & M Management, Inc.*, 752 F.Supp. 519, 521 (D.Mass.1990), *aff'd*, 929 F.2d 830 (1st Cir.1991). Moreover, where a federal cause of action completely pre-empts a state claim, that claim is deemed to "arise under federal law". *Franchise Tax Board*, 463 U.S. at 24, 103 S.Ct. at 2854.

■ As plaintiff concedes, the implied warranty and quiet enjoyment claims arise under federal law because they involve the rights and obligations of the parties pursuant to the plaintiff's lease with HUD, a federal agency. *See Conille v. Secretary of Housing and Urban Development*, 840 F.2d 105, 109 (1st Cir.1988) ("It is well-established that cases involving the rights and obligations of the United States or one of its agents under a contract, entered into pursuant to authority conferred by federal statute, are governed by federal law."). Accordingly, initial removal of the case was proper, and it is now within the discretion of this court whether or not to retain jurisdiction over the pendent claims. *See Ching*, 921 F.2d at 13.

■ This case has a long and complex history of discovery disputes, with which this court is painfully familiar. As previously stated, it was initially removed from Suffolk Superior Court in August, 1993. Subsequently, considerable time and resources have been devoted to its management. Accordingly, it is in the interest of "judicial economy, convenience, fairness and comity" for this court to retain jurisdiction over the remaining claims. *See Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988). Indeed, at the hearing, plaintiff did not contest this Court's jurisdiction over this action. The plaintiff's motion to vacate defendant's notice of removal is therefore **DENIED.**

## II. *SUMMARY JUDGMENT*

■ This court next considers the parties' cross-motions for summary judgment. Summary judgment must be granted where:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is appropriate "only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." *In re Varrasso*, 37 F.3d 760, 762 (1st Cir.1994) (citing cases). Accordingly, "the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). Thereafter, the burden "shifts to the nonmoving party to establish the existence of an issue of fact ... from which a reasonable jury could find for the [nonmoving party]." *Id.* (citations omitted). The nonmoving party cannot rest on mere allegations. Rather,

there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## A. FEDERAL PRE–EMPTION

The defendant argues that the plaintiff's claims based upon alleged violations of the Massachusetts Lead Paint Act are pre-empted by the Federal Lead Paint Act, 42 U.S.C. §§ 4821–4846.

■ The question of pre-emption arises under the Supremacy Clause of the United States Constitution. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 515, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992); *King v. Collagen Corp.,* 983 F.2d 1130, 1133 (1st Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993). In accordance with Article VI, any state laws that conflict with federal laws and regulations are pre-empted. *Id.* "[T]he critical question ... is whether Congress intended that federal regulation supersede state law". *Norris v. Lumbermen's Mut. Cas. Co.,* 881 F.2d 1144, 1147 (1st Cir.1989).

■ Congressional intent to pre-empt state law may be expressed "explicitly in the language of the statute," or implicitly, "by passing an extensive statutory scheme that extensively covers the field of regulation." *King,* 983 F.2d at 1133 (citations omitted). "Implied preemption also occurs when a conflict between state and federal law makes compliance with both impossible, or when state law would frustrate the purpose and objectives of the federal law." *Id.* at 1133. Especially in areas involving the state's interest in public health and safety, it is presumed that Congress did not intend to pre-empt state law. *Id.; Talbott v. C.R. Bard, Inc.,* 865 F.Supp. 37, 43 (D.Mass.1994).

■ Where "Congress has included an express pre-emption provision in a statute, [such a] provision ... implies that matters beyond that [pre-emptive] reach are not pre-empted." *Cipollone,* 505 U.S. 504, 112 S.Ct. at 2618; *King,* 983 F.2d at 1139; *Talbott,* 865 F.Supp. at 43. Thus, where a federal statute contains an express pre-emption provision, a court may not expand its inquiry to consider the possibility of implied pre-emption. *Talbott,* 865 F.Supp. at 43.

■ Remarkably, the issue of pre-emption with respect to claims arising under the Massachusetts Lead Paint Act appears to raise a question of first impression. The FLPPPA does contain an express pre-emption provision, 42 U.S.C. § 4846, which provides in part:

> It is hereby expressly declared that it is the intent of the Congress to supersede any and all laws of the States and units of local government insofar as they may now or hereafter provide for a requirement, prohibition or standard relating to **lead content in paints** or other similar surface-coating materials which differs from the provisions of this Act or regulations issued pursuant to this Act.... Any law, regulation or ordinance purporting to establish such different requirement, prohibition or standard shall be null and void.

*Id.* (Emphasis added).

■ In understanding the pre-emptive effect of section 4846, the court must turn first to HUD's own understanding of the preemption provision for guidance because an agency's interpretation of its own statute is controlling so long as not contrary to Congress' intent. *King,* 983 F.2d at 1134. The HUD Lead Based Paint Regulations provide:

> (a) HUD, as owner of federally-owned housing, will comply with State or local laws, ordinances, codes, or regulations governing lead-based paint hazard abatement.

> (b) Nothing in this part 35 [Lead–Based Paint Poisoning Prevention in Certain Residential Structures] is intended to relieve an owner or tenant of HUD-associated housing of any responsibility for compliance with State or local laws, ordinances, codes, or regulations governing lead-based paint hazard abatement.

> (c) HUD does not assume any responsibility with respect to inspection, enforcement, interpretation or determination of compliance with such State or local requirements, except that the Federal standard for lead content in paint supersedes any State or

local requirement, prohibition, or standard, as provided in section 506 of the Act.
Subpart D—Local Codes and Regulations, 24 CFR § 35.40 (1995).

The Massachusetts Lead Paint Act does not impose a requirement, prohibition or standard relating to the "lead content in paint," which differs from federal law. *See* Mass.Gen.L. ch. 111, §§ 190–199. In fact, the definition of "lead based paint" contained in the statute is substantially the same as that contained in the federal regulations: both define lead-based paint as any paint containing more than six one-hundredths of one per centum lead by weight with respect to paint manufactured after June 22, 1977, and any paint containing more than five tenths of 1 percent in lead by weight for any paint manufactured prior to that date. *See* Mass.Gen.L. ch. 111, § 196; 24 CFR § 35.12(a) (1995).

Rather than providing a standard for lead-based paint that differs from the federal standard, the Massachusetts Lead Paint Act imposes strict liability upon owners of residential dwellings who fail to remove or otherwise make inaccessible, any paint or other material containing dangerous levels of lead, whenever a child under six years of age resides in the dwelling and sustains injuries as a result of ingesting lead. *Bencosme v. Kokoras,* 400 Mass. 40, 42, 507 N.E.2d 748, 749–50 (1987); *See* Mass.Gen.L. ch. 111, §§ 197 & 199. The statute also provides for the imposition of punitive damages where an owner who has been notified of a violation of the statute fails to "satisfactorily correct or remove" the dangerous material. Mass. Gen.L. ch. 111, § 199. Accordingly, the Massachusetts Act governs lead-based paint hazard abatement—not the lead content in paint—and is therefore the type of State law expressly protected against pre-emption by HUD regulations. *See* 24 CFR § 35.40(a) & (b).

Relying primarily on *Conille* and on a thoughtful (unpublished) decision by Judge Keeton, *Brock v. Lorenzo Pitts, Inc.,* No. 91–10556–K (D.Mass. November 18, 1991), slip op. at 5, Pitts argues that to hold a managing agent indemnified by HUD liable under theories of strict liability and for punitive damages would interfere with the purposes of the National Housing Act. *Brock* involved a plaintiff injured in a fire who brought claims for negligence, breach of the implied warranty of habitability, and covenant of quiet enjoyment, and violations of G.L. ch. 93A. In *Conille v. Secretary of Housing and Urban Development,* 840 F.2d 105 (1st Cir.1988), the First Circuit refused to provide a damages remedy for a violation of the federal warranty of habitability. Because the purpose of the National Housing Act was to upgrade national housing, and that purpose is achieved through federal spending, the court concluded that imposition of a damages remedy against HUD as a penalty for breaching implied duties under its leases would "frustrate Congress's considered judgment to allocate scarce financial resources to improve the overall quality of the nation's housing stock." *Id.* at 113–114. Persuaded by these policy considerations, Judge Keeton concluded:

> "To create a damages action against a property manager would allow a plaintiff to avoid the *Conille* decision by suing the property manager instead of HUD, the owner. Because HUD must indemnify defendant, its agent, for any judgment awarded to plaintiff, HUD will be affected by any determination made in this case just as if it were a named party."

Slip op. at 5. *Contrast Evans v. Sentry Property Mgmt. Corp.,* 852 F.Supp. 71, 72 (D.Mass.1994) ("It would be dangerous precedent to hold that federal funding alone can transform that which is strictly a state cause of action into a federal case.").

While these policy considerations under the National Housing Act are significant, neither the *Conille* court, nor the *Brock* court, was faced with the express pre-emption language in the FLPPPA and HUD regulations governing HUD's self-avowed obligations to comply with state and local lead paint abatement statutes. Indeed it is noteworthy that unlike in *Brock,* HUD, although aware of this litigation, has chosen *not* to present the pre-emption argument either as an amicus or intervenor.

For the aforementioned reasons, this court concludes that the express pre-emption pro-

vision contained in the FLPPPA does not bar the plaintiff's state law claims.

## B. *OWNERSHIP*

■ The Massachusetts Lead Paint Act imposes liability on owners of residential dwellings in which dangerous levels of lead are present under certain, specific circumstances. *See* Mass.Gen.L. ch. 111, §§ 190–199. The defendant maintains that it is entitled to summary judgment with respect to the plaintiff's claims arising under the Act because it has never been the owner of the premises. The plaintiff argues that the defendant was in sufficient control of the premises to qualify as an "owner" for purposes of imposing liability, and presses a cross-motion for summary judgment.

Prior to 1993, the Massachusetts Lead Paint Act did not expressly define the term "owner", although it did distinguish between "owners" and other "persons" who may be joined as parties under Gen.L. ch. 111, § 127N. Section 127N provides:

In actions brought under this chapter against owners of residential premises a tenant may, prior to a hearing on the merits, move to join the following persons as parties: any individual, trust or corporation, partnership, association or other person who, acting alone or with another, has the authority to decide whether to rehabilitate, or sell or otherwise dispose of the premises, with or without record title or recorded interest. Such person shall not be joined, however, if its decision-making authority is derived solely from its position as a fiduciary if such person has never personally had any financial or possessory interest in the premises.

If the court finds that the owner may be unable for financial reasons or otherwise to perform any act or pay any liability that may be ordered if judgment is entered for the tenant, the court shall allow the motion joining any such person. The owner and any person so joined shall be jointly and severally liable for taking any action or paying any damages ordered by the court; provided, however, that the provisions of this section regarding the liability of persons other than owners shall not apply to two and three family owner-occupied residential premises.

■ It is plain under Section 127N that a person who is not an owner cannot be held liable under the statute unless the person "(1) is an individual, trust or corporation, partnership, association, or other person," within the meaning of the statute, *and* "(2) has the authority to decide whether to rehabilitate or sell or otherwise dispose of the premises." *Perez v. Boston Housing Auth.,* 368 Mass. 333, 338, 331 N.E.2d 801, appeal dismissed 423 U.S. 1009, 96 S.Ct. 440, 46 L.Ed.2d 381 (1975). (Emphasis added). Further, a tenant may join as a party defendant "not only the owner of the premises" but also these other individuals only if the owner is "unable for financial reasons to provide effective relief." *Id.*

■ In 1993, the following definition of "owner" was added to the Massachusetts Lead Paint Act:

"Owner", any person who alone or jointly or severally with others (i) has legal title to any premises; (ii) *has charge or control of any premises as an agent who has authority to expend money for compliance with the state sanitary code,* executor, administrator, trustee or guardian of the estate or the holder of legal title, (iii) is an estate or trust of which such premises is a part, or the grantor or beneficiary of such an estate or trust or (iv) is the association of unit owners of a condominium or cooperative, which shall be considered an owner solely with respect to common areas and exterior surfaces and fixtures of such condominium or cooperative; provided, however, that the term "owner" shall not include a secured lender except to the extent provided in section one hundred and ninety-seven D.

*See* Mass.Gen.L. ch. 111 § 189A (Added by St.1993, ch. 482, § 3). This amendment is helpful in construing the meaning of the earlier statutory provision. *See Wilcox v. Riverside Park Enterprises, Inc.,* 399 Mass. 533, 538, 505 N.E.2d 526, 529 (1987) ("clarification resulting from [a] recodification ... of existing statutory material is a particularly suitable guide to the meaning of an earlier statutory provision"); *Graci v. Damon,* 6 Mass.

App.Ct. 160, 170, 374 N.E.2d 311, 317 (1978) (In appropriate circumstances a court may resort to the subsequent act of a Legislature [to determine] legislative intent in a preexisting statute.) *See generally Quintal v. Commissioner of Dept. of Employment and Training*, 418 Mass. 855, 856, 641 N.E.2d 1338, 1339 (1994) (in the absence of specific language mandating retroactive application, statutory amendments or revisions are to be applied prospectively).

At the time of the plaintiff's alleged injury in 1987, regulations promulgated pursuant to the Act defined "owner" as "every person who ... has charge or control of any dwelling unit ... in any capacity but not limited to a mortgagor, agent, executor, administrator, administratrix, trustee, or guardian of the holder of legal title." 105 Code Mass.Regs. Title 105, § 460.020 (1994).

There is no dispute that HUD was the owner of the property in 1987 when plaintiff allegedly ingested the lead paint. Plaintiff argues that the real estate manager is also an "owner", as defined by regulation 460.020, because it is an "agent" for the holder of legal title, HUD. However, in order to join Pitts as a party under Section 127N, the plaintiff must present admissible evidence that the requirements of the statute have been met.[2]

Here, at the time of the alleged lead paint poisoning, Pitts acted in the capacity of an "agent" of HUD, which maintained control over the daily maintenance and minor repairs of the premises for the owner HUD. The affidavit of Lorenzo Pitts stated he had "no independent authority to rehabilitate, inspect, or sell" the HUD properties, and that the "selection of a deleader and the cost of deleading a property was an expenditure that required separate HUD approval." The contract between Pitts and HUD specifically required the manager to obtain authorization for any expenditures outside its pre-established maintenance budget. While it is unclear from the documents submitted by the parties exactly what that limit was in 1987, the contract specifically distinguishes between the "operating budget" which covered "day to day maintenance and operation of the project" and the "capital improvements" budget, which included improvements required to achieve "decent, safe and sanitary housing."

Moreover, Article 5 of the contract, specifically provides:

Procurement of Supplies, Materials, Equipment and Services

The Contractor will be required to make day-to-day purchases for repairs, maintenance and supplies of $200 or less ... as directed by the Government ... without receiving competitive quotations....

The Contractor, when requested by the Government, shall be required to solicit bids on purchases up to $10,000 for supplies and services and up to $2,000 in the case of contracts involving the construction trades.... [T]he Contractor shall prepare Form HUD–2524 in the name of the lowest bidder for award, along with a copy of each higher bid received.

Documents submitted by the defendant establish that the procedure described in Article 5 was followed in the present case, and that the lowest bid for de-leading the premises was $6,500.00. This bid was, in fact, approved by HUD before any work was commenced. Thus, the undisputed evidence demonstrates that the defendant had no "authority to decide whether to rehabilitate ...

---

2. There are no published cases which provide guidance on the meaning of "owner" under the state regulations, as applied to property managers. The only published opinions on ownership are not particularly helpful here. *Roman v. Friedland*, 849 F.Supp. 827 (D.Mass.1994) (imposing civil liability on an owner's wife where she was identified as the landlord on the lease, had joined with her husband in mortgaging the property, and was listed as the record owner in a UCC statement recorded at the county registry of deeds); *Cf. Commonwealth v. Advantage Bank*, 406 Mass. 885, 887, 550 N.E.2d 1388, 1390 (1994) (no criminal sanctions on bank which was a mortgagee not yet in physical possession). The only scant authority the parties could find was an unpublished opinion of a single justice of the Massachusetts Appeals Court, which is of limited precedential value. *See Greene v. Marini*, Memorandum and Order, No. 94–J–228 (Mass.App.Ct. April 12, 1994) (Fine, J.) ("It would not be sufficient, however, to bring one into the category of 'owner' that he merely collected rents and did some maintenance and repair work. The regulations must be given effect unless inconsistent with the authorizing statute.").

the premises", with respect to lead paint abatement, as required by the first prong of Section 127N.

Accordingly, Counts I and II asserting claims under the Massachusetts Lead Paint Act must be dismissed.

### C. NEGLIGENCE

This court next considers the defendant's motion for summary judgment with respect to the plaintiff's negligence claim against the contractor. As background, the complaint does not include a cause of action against HUD under the Federal Tort Claims Act ("F.T.C.A."), 28 U.S.C. § 2671 *et seq.*, for violation of its duty to follow its own regulations with respect to lead paint abatement. *See Pierre v. United States*, 741 F.Supp. 306, 309 (D.Mass.1990).

■ The defendant maintains that it is immune from liability because it was acting as an agent of HUD at the time of the alleged negligence. The defendant further maintains that it did not owe a duty to the plaintiff because it had no knowledge that any children under six years of age were residing at the premises, or that there was lead in the paint. In support of its position, the defendant points to the rental application completed by the plaintiff's father, which does not list any children as residents, and to various statements made by her mother, indicating that she attempted to conceal the fact that she and her children were living at the premises.

Several courts considering the issue of immunity under similar circumstances have determined that an area management broker is an "independent contractor" rather than an "employee" of the United States Government within the purview of the F.T.C.A. *See, e.g., Tisdale v. United States*, 62 F.3d 1367, 1371 (11th Cir.1995); *Harris v. United States*, 424 F.Supp. 627, 629 (D.Mass.1976) (where property manager was not supervised on a day to day basis with respect to repair, maintenance and operating activities, it was appropriately characterized as an independent contractor).

The mere fact that HUD is contractually obligated to indemnify Pitts for any judgment rendered in this action does not imbue Pitts with the immunity that may be attributable to HUD under the Federal Tort Claims Act. *See* 28 U.S.C. § 2671 *et seq.; See also Spruytte v. Walters*, 753 F.2d 498, 512 n. 6 (6th Cir.1985) ("A government may not manufacture immunity for its employees by agreeing to indemnify them."); *Demery v. Kupperman*, 735 F.2d 1139, 1146–49 (9th Cir. 1984), *cert. denied sub nom., Rowland v. Demery*, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985); *Donald M. v. Matava*, 668 F.Supp. 703, 706 (D.Mass.1987). Accordingly, the defendant's claim of immunity as an agent of the United States is unfounded.

■ In support of her negligence claim against Pitts, the plaintiff has presented the following evidence: 1) the defendant's own deposition, in which Lorenzo Pitts acknowledged a contractual responsibility to inspect and maintain the premises in accordance with local codes and regulations; 2) the deposition transcript of Carlita Ward, in which she claims to have overheard a conversation between Lorenzo Pitts' son, acting as the defendant's agent, and the plaintiff's father, wherein Pitts' son allegedly stated "I know that ... the children are staying here"; and 3) the original rental application, on which the space reserved for the number of children appears to have been filled in and subsequently crossed out.

This evidence is sufficient to raise a genuine issue of material fact as to whether the defendant knew or should have known that children under six years of age resided at the premises, and therefore should have alerted HUD to the need for inspection for the presence of lead paint. Accordingly, the defendant's motion for summary judgment with respect to the plaintiff's claim of negligence is **DENIED.**

### D. CHAPTER 93A

■ Plaintiff argues that Pitts is liable under G.L. c. 93A for its failure to disclose to the tenant that there were illegal levels of lead in the premises. Plaintiff rests his claim on 940 Code Mass.Regs. 3.17(1)(c), which provides:

(1) Conditions and Maintenance of a Dwelling Unit. It shall be an unfair and deceptive act or practice for an owner to . . . .

**58**

(c) Fail to disclose to a prospective tenant the existence of any condition amounting to a violation of law within the dwelling unit of which the owner had knowledge or upon reasonable inspection could have acquired such knowledge at the commencement of the tenancy.

940 Code Mass.Regs. 3.17(1)(c). (Emphasis added). The regulation, which was in effect in 1987, further provides that an " 'owner' shall include one who manages, controls, and/or customarily accepts rent on behalf of the owner." 940 Code Mass.Regs. 3.01.

Because Pitts was an "owner" within the meaning of the regulation, the Court must determine whether this regulatory provision has been violated. Here, there is no violation because there is insufficient evidence to create a genuine issue of material fact as to the defendant's knowledge, prior to the inception of the tenancy, that a child under six would be living at the premises. Plaintiff has pointed to no regulations governing the duty to disclose unsafe conditions after the landlord-tenant relationship has commenced.

While there is a disputed issue of fact as to whether Pitts eventually knew a child under six years of age lived in the dwelling, the undisputed evidence is that it had no actual knowledge of the presence of lead paint at the time it was ingested. As plaintiff concedes, Pitts is not liable under G.L. ch. 93A for failing to disclose the suspicion or likelihood of lead-based paint. *Underwood v. Risman*, 414 Mass. 96, 100, 605 N.E.2d 832, 834 (1993) (rejecting a lower court ruling that owner should have disclosed the presence of lead-based paint not on his knowledge but on his experience in real estate and his testimony that "he was aware of the hazards associated with lead-based paint, and his awareness that older houses have a higher likelihood of lead-based paint").

While the undisputed evidence is that defendant did not receive actual notice of the lead violations until April 13, 1989, plaintiff points out that as of February 23, 1990, the premises still had not been properly deleaded. Plaintiff also submits an audit report of the Office of Inspector General in 1993, which recommended terminating Pitts' contracts due to "failure to maintain accountabil-

ity of HUD funds." While the record is unclear as to the reason for the delay in property deleading, Pitts provided evidence that it obtained approval from HUD to relocate plaintiff to another apartment on May 31, 1989. Plaintiff has produced no evidence that the time period between actual notice of lead-based paint and relocation was a substantial factor in causing plaintiff's injuries. Accordingly, the Chapter 93A claim is dismissed.

### ORDER

Plaintiff's Motion to Vacate Notice of Removal is **DENIED**. Plaintiff's Motion for Sanctions pursuant to Fed.R.Civ.P. 11 is **DENIED**. Plaintiff's Cross-motion for Partial Summary Judgment is **DENIED**. Defendant's Motion for Summary Judgment is **ALLOWED** with respect to Counts I, II and III of the complaint, and **DENIED** with respect to Count IV.