STANLEY ANKIEWICZ, JR.[1] *vs.* PAUL KINDER & another.[2]

Suffolk. September 5, 1990. - December 12, 1990.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Dismissal. *Contribution. Actionable Tort. Lead Poisoning Prevention. Statute*, Construction.

The judge in a civil action properly exercised his discretion in allowing the plaintiff's motion for voluntary dismissal of certain claims in accordance with Mass. R. Civ. P. 41 (a) (2). [794-795]

This court concluded that the substantive nature of a claim under G. L. c. 111, §§ 190-199A, the lead poisoning prevention law, is a tort claim, within the scope of G. L. c. 231B, § 1 (*a*), the contribution statute. [795-796] LIACOS, C.J., dissenting.

In an action against the owners of residential property under G. L. c. 111, §§ 190-199A, arising out of the alleged lead poisoning of a young child, in which the defendants filed a third-party complaint against the child's mother for contribution, alleging that she negligently allowed her child to ingest lead-based paint found on the premises, the judge erred in dismissing the defendants' third-party complaint for contribution. [796] LIACOS, C.J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on August 10, 1984.

A motion for reconsideration of the dismissal of a third-party claim for contribution was heard by *Herbert Abrams,* J.; a motion by the plaintiff to dismiss the tort and breach of warranty counts of the complaint was heard by *Robert L. Steadman,* J.; and a motion for separate judgment was heard by *Robert A. Mulligan,* J.

The Supreme Judicial Court granted a request for direct appellate review.

---

[1]His mother, Roseanne Ankiewicz, brought the action on his behalf.

[2]Josephine Kinder.

*Alexander A. Padis, Jr.*, for Paul R. Kinder & another.
*Alan D. Tuttman* for the plaintiff.
*William L. Maher* for Roseanne Ankiewicz.
*Stephanie Pollack*, for Conservation Law Foundation, amicus curiae, submitted a brief.
*Jeffrey Petrucelly & Jessica Ladd*, for Massachusetts Tenants Organization & others, amici curiae, submitted a brief.
*Cameron F. Kerry, Robert S. Steinberg, Robert C. Tommasino & Gerald T. Anglin*, for Massachusetts Property Insurance Underwriters Association, amicus curiae, submitted a brief.

LYNCH, J. This case arises out of the alleged lead poisoning of the plaintiff, Stanley Ankiewicz, Jr., a minor under the age of six. The complaint asserted three counts against the defendants, landlords of the apartment occupied by the plaintiff and his parents, alleging (1) negligence, (2) breach of the implied warranty of habitability, and (3) violation of the lead poisoning prevention law. G. L. c. 111, §§ 190-199A (1988 ed.). This is an appeal from judgments of the Superior Court dismissing the defendants' third-party claim for contribution against the mother of the minor plaintiff, and allowing the plaintiff to dismiss counts one and two of the complaint in accordance with Mass. R. Civ. P. 41 (a) (2), 365 Mass. 803 (1974). We granted the defendants' application for direct appellate review.

The defendants filed a third-party complaint against the plaintiff's mother for contribution, alleging that she negligently allowed her child to ingest lead-based paint found in the apartment. In February of 1985, a Superior Court judge granted the mother's motion to dismiss the third-party complaint on the ground of parent-child immunity. In 1988, however, while this action was still pending, this court abolished the doctrine of parental immunity for negligently caused injuries to minor children. *Stamboulis* v. *Stamboulis*, 401 Mass. 762 (1988).

The defendants then moved for reconsideration of the dismissal of the third-party complaint in light of *Stamboulis*. Another Superior Court judge allowed that motion, and de-

nied the mother's motion to dismiss the third-party complaint — effectively reinstating the landlords' claim for contribution — with respect to the plaintiff's negligence and breach of warranty claims. The judge dismissed the landlords' claim for contribution on the statutory cause of action, however, ruling that the Massachusetts contribution statute, which applies only to liability "in tort," G. L. c. 231B, § 1 (*a*) (1988 ed.), does not apply to causes of action arising under G. L. c. 111, §§ 190-199A. He reasoned that "it would be straining to construe a claim under [the lead poisoning prevention act] as sounding in tort, because it is founded on an act of the legislature and not on the common law decisions that constitute the basis of tort law," and that allowing contribution against parents would subvert the policies underlying the act. We reverse in part and affirm in part.

I. On reconsideration, the judge reinstated the landlords' claim for contribution with respect to the negligence and breach of warranty counts, but he dismissed the contribution claim as to the statutory cause of action. This led to the child's seeking to dismiss the negligence and breach of warranty claims. With those claims dismissed, but leaving the statutory claim, the plaintiff's mother would not be required to contribute to an award to the child (assuming no reversal on appeal of the judge's ruling relative to the statutory claim).

The landlords' claim of error arising from the dismissal of the plaintiff's negligence and breach of warranty claims is based on the following provisions of Mass. R. Civ. P. 41 (a) (2): "If a *counterclaim* has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court" (emphasis added).

Since the defendants' claim for contribution is against the minor plaintiff's mother, it is not a counterclaim but a third-party claim. Compare Mass. R. Civ. P. 13, as amended, 385 Mass. 1215 (1982), with Mass. R. Civ. P. 14 (a), as a-

mended, 385 Mass. 1216 (1982). The dismissal of the plaintiff's claim is within the judge's discretion. The allowance of the plaintiff's motion for voluntary dismissal is therefore subject to review here under an abuse of discretion standard. See *Flynn* v. *Church of Scientology of Cal., Inc.,* 19 Mass. App. Ct. 59, 65-66 (1984). No such abuse of discretion has been shown.

II. Because we rule that the lead paint prevention act imposes tort liability on landlords who violate its provisions, we conclude that the plaintiff's claim under the lead poisoning prevention act is within the scope of our contribution statute, G. L. c. 231B, § 1 (*a*).

The judge ruled that statutory causes of action created by the Legislature out of whole cloth categorically do not sound in tort. In *Wolfe* v. *Ford Motor Co.,* 386 Mass. 95, 100 (1982), however, this court ruled that the key variable in defining whether claims sound in tort is "the substantive quality of the claims." See also *Hayon* v. *Coca Cola Bottling Co. of New England,* 375 Mass. 644, 649 (1978) ("The term 'liable in tort,' as used in § 1 (*a*) to create and define the statutory right of contribution, is broad in scope . . .").

While there is probably no universally accepted definition of the concept of torts, certain elements exist common to all torts which can aid us in delineating the concept. "A tort is a civil wrong (as distinguished from a crime), other than a breach of contract, for which . . . the law . . . provides a remedy." J.R. Nolan & L.J. Sartorio, Tort Law § 1 (2d ed. 1989). All torts share the elements of duty, breach of that duty, and damages arising from that breach. The cause of action created by the statute in question contains all those elements, and it is clearly tort-like in nature.

We therefore conclude that the substantive nature of the plaintiff's claim under the lead paint act is a tort claim, within the ambit of the contribution statute.

In addition we note that, although the statute imposes strict liability on a property owner for injuries sustained by children under six years of age who ingest lead-based paint that the owner fails to remove as the statute requires,

*Bencosme* v. *Kokoras*, 400 Mass. 40, 41 (1987), it explicitly provides that such a property owner is not exclusively liable. G. L. c. 111, § 199 ("The remedy provided by this section is not exclusive and supplements any existing statutory or common law cause of action"). A rule of exclusive owner liability would not only run counter to this specific statutory provision, but would also unfairly force owners to shoulder the entire burden of liability, with no right of contribution against other parties potentially at fault, such as negligent building inspectors, lead-based paint manufacturers, and paint removal contractors. Cf. *Ayala* v. *Boston Hous. Auth.*, 404 Mass. 689, 705 (1989) (housing authority may be found liable for failure to inspect for lead-based paint). We therefore decline to interpret the statute contrary to its plain language as imposing liability on landlords exclusively.

The mother and amici curiae also argue that this court should prevent contribution actions against parents of lead-poisoned children for policy reasons. They argue that, if contribution against parents is permitted, the effectiveness of the act as an incentive for property owners to remove lead paint from residential properties will diminish as suits by parents become less frequent and less costly to landlords. In addition, they note that in most cases contribution by the parents would have the practical effect of reducing the child's recovery because the family is generally a single economic unit.

We recognize that lead poisoning among children remains an enduring and serious public health danger. These policy arguments, however, should be addressed to the Legislature. We see no bases in the text or legislative history of the lead poisoning prevention law for the exclusion of contribution actions against parents for negligent supervision.

We therefore reverse the dismissal of the defendants' third-party complaint for contribution against the plaintiff's mother and affirm the dismissal of the plaintiff's tort and breach of warranty counts.

*So ordered.*

LIACOS, C.J. (dissenting). The issue before us is whether the Legislature intended to impose liability on parents of lead-poisoned children when it enacted the lead poisoning prevention law. G. L. c. 111, §§ 190-199A (1988 ed.). The court today holds that the owners of an apartment, which allegedly contains lead paint, may seek contribution from the mother of a child allegedly poisoned by the lead-based paint. In my view, the Legislature did not intend that the owners of residential properties, who breach their statutory duty of maintaining their apartments free of lead contamination, be allowed to seek contribution from the parents of children poisoned by the lead-based paint. Accordingly, I dissent.

The court today concludes that our contribution statute, G. L. c. 231B, § 1 (*a*) (1988 ed.), permits owners of residential properties to seek contribution from parents whose negligent acts contributed to the lead-poisoning of their children. The contribution statute states that, "where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them." The court concludes that, since "the substantive nature of the plaintiff's claim under the lead paint act is a tort claim," it falls "within the ambit of the contribution statute." *Ante* at 795. This approach strikes me as being somewhat simplistic. In order to decide whether the violation of the lead paint statute constitutes a tort within the meaning of G. L. c. 231B, § 1 (*a*), we should first inquire whether the Legislature intended to impose a statutory duty on the part of the parties against whom contribution is sought. In other words, we need to decide whether the lead paint act imposes a statutory duty on the part of parents *before* we can address the issue whether that duty sounds in tort. "There is no right of contribution unless the potential contributor is directly liable to the injured person." J.R. Nolan & L.J. Sartorio, Tort Law § 438 (2d ed. 1989). While the lead paint statute itself may, as the court holds, create an action "in tort," it does not follow that the Legislature intended that the parents of

children who ingest lead-based paint in rented apartments be found liable in tort.[1]

The court uses a twofold analysis to support its position that parents may be liable for the lead poisoning of their children. First, the court notes that "[t]he remedy provided by [the lead paint act] is not exclusive and supplements any existing statutory or common law cause of action." G. L. c. 111, § 199. The court concludes that the statute therefore "explicitly provides that . . . a property owner is not exclusively liable." *Ante* at 796. The quoted section, however, does not address the issue of *who* may be liable for the lead poisoning of young children. Instead, the section addresses the issue of remedies, explaining that a claim under the lead paint act is not meant to be exclusive; in other words, such a claim does not preempt other statutory or common law claims which may be brought by plaintiffs. The quoted language, however, does not limit or expand the type of defendants who may be liable when young children are poisoned by lead-based paint.

Secondly, the court points out that "[a] rule of exclusive owner liability . . . would also unfairly force owners to shoulder the entire burden of liability, with no right of contribution against other parties potentially at fault, such as negligent building inspectors, lead-based paint manufacturers, and paint removal contractors." *Ante* at 796. It is curious that this is the type of policy argument which the court admits should be dealt with by the Legislature. *Ante* at 796. Even if this court were to hold that owners of residential properties cannot seek contribution from parents of lead-poisoned children, it does not follow, as the court suggests,

---

[1]In *Wolfe* v. *Ford Motor Co.*, 386 Mass. 95, 99-100 (1982), we held that a manufacturer of automobiles, who negligently injured the plaintiffs, could seek contribution from a second defendant who sold the vehicle and was liable for the same injuries based on a breach of warranty claim. We concluded that liability for a breach of an implied warranty of merchantability was liability "in tort" within the meaning of G. L. c. 231B, § 1 (*a*). *Id.* In *Wolfe, supra*, however, it was clear that the second defendant, as the seller of the vehicle, could be held liable under the breach of warranty statute. G. L. c. 106, §§ 2-314, 2-318 (1988 ed.).

that other potential defendants would escape liability in the future. The Legislature may have intended that negligent building inspectors, lead-based paint manufacturers, and paint removal contractors be liable in certain cases when their acts or omissions contribute to the lead poisoning of young children. Cf. *Ayala* v. *Boston Hous. Auth.*, 404 Mass. 689, 698 (1989) (housing authority has duty to inspect for lead-based paint under 42 U.S.C. § 1437f [1982]). Those defendants, however, are not before us, and, therefore, we do not need to decide whether claims may be brought against them. In order to conclude that the Legislature did not intend to impose liability on parents for their children's ingestion of lead, it is not necessary to hold that residential owners are exclusively liable as against all other potential defendants. The only issue before us is whether a tenant who is a parent is also to be held liable for lead paint poisoning of that parent's child.

When interpreting a statute according to the intent of the Legislature, we must look to the language used and to the purpose and remedies intended to be advanced. *Glasser* v. *Director of the Div. of Employment Sec.*, 393 Mass. 574, 577 (1984). *Commonwealth* v. *Galvin*, 388 Mass. 326, 328 (1983). The language of the statute imposes liability on owners of residential properties.[2] We must therefore determine

---

[2]"Whenever a child under six years of age resides in any residential premises in which any paint, plaster, soil or other accessible material contains dangerous levels of lead, *the owner shall remove or cover said paint, plaster, soil or other materials as required by this section so as to make it inaccessible to children under six years of age.* Whenever any such residential premises containing said dangerous levels of lead undergoes a change of ownership and as a result thereof, a child under six years of age will become a resident therein, the new owner shall remove or cover said paint, plaster, soil or other material as required by this section so as to make it inaccessible to children under six years of age." (Emphasis supplied.) G. L. c. 111, § 197 (a).

*"The owner of any residential premises* shall be liable for *all* damages caused by his failure to comply with the provisions [of this statute]. The *owner of any residential premises* who is notified of a dangerous level of lead in paint, plaster, soil or other material present upon his premises . . . and who does not satisfactorily correct or remove said dangerous conditions shall in addition to the provisions in the preceding paragraph be sub-

whether parental liability advances the purposes and remedies of the statute.

According to the Report of the Special Legislative Commission on Lead Poisoning Prevention (1986) (Report), issued before the lead paint act was amended in 1988, the statute was enacted to protect young children from the dangers of lead poisoning. The statute itself states that it should be "strictly construed and enforced so as to best protect the safety of occupants of residential premises in which a child or children under six years of age resides." G. L. c. 111, § 197 (*g*). To hold that parents may be liable for their children's ingestion of lead-based paint would undermine the purpose of the statute to such an extent that it is not possible to conclude that the Legislature intended that owners be able to seek contribution from parents.

After today, owners of residential properties contaminated with lead-based paint will be able to argue in almost every action brought against them that the parents are partly responsible for the lead poisoning of their children. Under the court's ruling, parents will become third-party defendants in almost every suit brought against owners of residential properties under the lead paint act. This will create a powerful disincentive on the part of parents and their children to sue owners who bear a heavy burden, under the language of the statute, in protecting young children from the dangers associated with lead paint. If parents and their children bring fewer actions against owners of residential properties who illegally maintain their apartments contaminated with lead, the statute will become less effective in protecting children. This reasoning is not, as the court suggests, a "policy argument[ ]" against imposing liability on parents. Instead, it is an interpretation of the statute which makes it an effective piece of legislation in harmony with common sense and reason. See *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxation*, 363 Mass. 685, 691 (1973); *Atlas*

---

ject to punitive damages, which shall be treble the actual damages found" (emphasis supplied). G. L. c. 111, § 199.

*Distrib. Co.* v. *Alcoholic Beverages Control Comm'n,* 354 Mass. 408, 414 (1968).

In *Stamboulis* v. *Stamboulis,* 401 Mass. 762 (1988), we held that the parent-child immunity doctrine does not provide an absolute bar in an action by a child against a parent whose negligence caused injury to the child. Since the issue was not before us, however, we refused to decide the appropriate standard of care which parents owe their children. *Id.* at 765. We also refused to decide whether to impose parental liability for negligent supervision. See *id.* at 765 n.6. Similarly, in this case, we do not need to decide whether the plaintiff's mother was negligent in allowing her child to ingest or inhale lead-based paint since the Legislature has enacted a statute which protects children from this very danger.[3]

Our abrogation of the parent-child immunity doctrine in *Stamboulis, supra,* does not mean that owners of lead-contaminated residential properties should now be allowed to seek contribution from parents of young children poisoned by lead-based paint. In fact, the opposite argument can be made. The parent-child immunity doctrine was abolished by this court seventeen years after the original lead paint act was enacted, and several months after it was amended. The fact that the parent-child immunity doctrine was recognized

---

[3]The legislative report states that "[t]he mechanism by which children ingest lead-based paint is often normal hand-mouth activity. Infants commonly put non-food objects covered with leaded dust into their mouths and toddlers frequently handle toys and are exposed to accessible surfaces such as window sills. . . . Children may also become poisoned through the ingestion or inhalation of dust or soil which has been contaminated by flaking paint." Report, *supra* at 3. Children become contaminated with lead, therefore, by simply acting as children. It is questionable whether we should, as a matter of common law, find parents negligent for "allowing" their children to ingest and inhale lead. At least one appellate court has affirmed the dismissal of a counterclaim brought by the manufacturer and seller of lead paint against the father of an infant plaintiff. See *Morales* v. *Moss,* 44 A.D.2d 687 (N.Y. 1974). Cf. *Jackson* v. *Wilmington Hous. Auth.,* No. 81C-MR-31 (Del. Sup. Ct. 1986) (legislative policy of placing burden on public housing authority to protect children from lead paint precludes it from arguing that parents' failure to protect child is superseding cause to its negligence).

in this Commonwealth when the lead paint act was enacted, and later amended, is additional evidence that the Legislature did not intend that parents be liable for their children's ingestion or inhalation of lead-based paint.

The Legislature has made a policy decision that the best way to remedy the problem of lead poisoning of young children is to have owners of residential property be strictly liable when they own lead-contaminated property in which children under six years of age reside. See *Bencosme* v. *Kokoras*, 400 Mass. 40, 43 (1987). Owners, therefore, should not be allowed to shift part of their statutory burden to parents in the absence of any evidence that the Legislature intended to impose liability on parents. I dissent.