Garsh, J.
This action involves a series of disputes arising from the partial destruction of certain income-producing residential real estate. Plaintiff, George Lambert (“Lambert”), the holder of a second mortgage on the premises, asserts claims against Fall River Five Cent Savings Bank (“Fall River Five”), the first mortgagee, Puritan Management Co., Inc. (“Puritan”), the contractor hired to repair the damages to the mortgaged property, and Jerome Appraisal Company, Inc. (“Jerome”), hired by Fall River Five to inspect Puritan’s work.
Puritan and Jerome now move to dismiss the single count against each of them for violations of chapter 93A, §11 (Counts II and IV). For the reasons set forth below, their motions are ALLOWED.
BACKGROUND
The allegations of the complaint disclose the following: On July 1, 1990, fire caused damage to an apartment building on Glasgow Street in Fall River. On that date, this property was owned by Stewart Kusinitz (“Kusinitz”) and Joseph Saravo (“Saravo”), who conducted business as I.J. Realty. Fall River Five held a first mortgage and Lambert a second mortgage on the property. After the fire, Kusinitz and Saravo defaulted on their obligation to Lambert and made no further payments on the second mortgage loan. The second mortgage contained an assignment of rents in the event of default.
I.J. Realty maintained a policy of fire insurance through Public Service Mutual Insurance Co. (“PSM”) that listed Lambert as a protected mortgage holder. On or about August 23, 1990, PSM made a partial loss payment of $25,000. Lambert was named as a payee. Lambert alleges that he endorsed the check in reliance on Fall River Five’s promise that the funds would be placed in escrow and would be disbursed only for work actually done. Thereafter, Lambert visited the site and complained to Puritan that the work was substandard. At this time, he also advised Puritan of his security interest in the premises as second mortgage holder.
Based upon reports from Jerome that misrepresented the amount of work done by Puritan and failed to disclose that work done by Puritan was not up to code, Fall River Five disbursed $24,347 to Puritan. Lambert alleges that the work described in Puritan’s invoices: (a) had not actually been performed; (b) did not conform to the building code and/or industry standards; and (c) was billed at unreasonably inflated prices. In a related action, George Lambert v. Public Service Mutual Insurance Co., Superior Court Civil Action No. 91-1610, this court (Xifaras, J.) ruled that Fall River Five, as first mortgagee, has priority and, that, since the insurance proceeds did not exceed the first mortgage debt, Lambert was not entitled to any of those proceeds.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the allegations of the complaint, as well as any permissible inferences in the plaintiffs favor, are taken as true.[2] Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). A “complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 42, 45-46 (1957). See also Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979); Charbonnier v. Amico, 367 Mass. 146, 152 (1975).
I.Puritan
Puritan seeks to dismiss Lambert’s chapter 93A claim on the grounds that this statute does not regulate conduct in the absence of a business relationship and that there was no such relationship between Puritan and Lambert. At the time the Puritan contract was signed, Kusinitz and Saravo still owned and managed the property. There is no allegation that Lambert was a parly to the Puritan contract or that anyone other than Kusinitz and Saravo contracted with Puritan or participated in any way in the negotiation or execution of that contract.
Lambert correctly asserts that there is no requirement that parties be in privity in order for their actions to come within the scope of chapter 93A. Nei v. Boston Survey Consultants, Inc., 388 Mass. 320, 324 (1983). Chapter 93A provides a remedy broader than common-law tort or contract actions. Slaney v. Westwood Auto, Inc., 366 Mass. 688, 703-04 (1975). Nevertheless, “it is somewhat significant that. . . [Puritan] had no contractual or business relationship with the plaintiffl].” Nei, supra at 324. Section 11 of chapter 93A “was intended to refer to individuals acting in a business context in their dealings with other business persons . . .” Manning v. Zuckerman, 388 Mass. 8, 10 (1983).
*634 Whatever the outer limits of chapter 93A may be, Lambert does not fall within them. This is not a situation where the nonprivity plaintiff has standing to maintain any other cause of action against this defendant. E.g., Maillet v. ATF-Davidson Co., 407 Mass. 185, 191 (1990) (nonprivity plaintiff entitled to bring product liability claims against a defendant may also assert claims under chapter 93A). As a second mortgagee, even with the disclosures Lambert alleges he made to Puritan after the construction began, he is not within a class of persons whom Puritan, a construction contractor, would have reason to expect to act or to refrain from acting in reliance upon its invoices. “(PJrivity is not required to maintain a non-warranty-based action under 93A, i.e., one based on fraud, so long as the parties are engaged in more than a minor or insignificant business relationship.” Standard Register Co. v. Bolton-Emerson, Inc., 38 Mass.App.Ct. 545 (1995) (emphasis added). See also Cash Energy, Inc. v. Weiner, 768 F.Supp. 892, 894 (D. Mass. 1991) (“apart from claims of unfair competition, section 11 applies only between parties having some transactional business relationship”). The mere fact that Lambert, some time after the contract was executed and work had begun, complained to Puritan about Puritan’s work does not establish a business relationship between these parties.
Moreover, none of the allegations of the complaint support an inference that Kusinitz and Saravo intended to give Lambert the benefit of Puritan’s promised performance. The complaint fails to raise a triable issue as to whether Lambert was a third-party beneficiary.[3] E.g., Chestnut Hill Development Corp. v. Otis Elevator Co., 653 F.Supp. 927, 932-33 (D. Mass. 1987) (chapter 93A coverage extends to intended third-party beneficiaries). To permit Lambert to sue under these circumstances “would extend liability indefinitely and, in so doing, would eviscerate the business relationship requirement.” John Boyd Co. v. Boston Gas Co., 775 F.Supp. 435, 440 (D. Mass. 1991).
Furthermore, the allegations of the complaint, read together with the judgment entered in Lambert’s action against PSM, do not support an inference that Lambert suffered any loss of money or property as a result of any unfair or deceptive act or practice by Puritan. In order to maintain an action under c. 93A, §11, the plain words of that statute require a plaintiff to allege, in good faith, a “loss of money or property.” Mass.R.Civ.P. 11. Lambert did not pay Puritan, nor did he have any legal entitlement to any of the funds he complains were used to pay Puritan. Even if, as Lambert contends in the complaint, Puritan was entitled to be paid only $7,000 to $8,000 for the work it performed, then Fall River Five, not Lambert, was the loser. Cf. Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, 405 Mass. 506 (1989) (principal stockholder of closely held corporation did not suffer loss of money or property within the meaning of chapter 93A). The $7,000 to $8,000 benefit that Puritan did confer on the property inured to Lambert’s benefit without cost to him.
Accordingly, the complaint fails to state a cause of action against Puritan.
II. Jerome
For the same reasons, the complaint fails to state a claim under G.L.c. 93A against Jerome. Count Four is based upon allegations of fact in paragraphs 1 through 13 of the complaint. Those allegations allege nothing more than that Jerome transacts business within the Commonwealth, that Fall River Five paid Puritan based on reports from Jerome, and that Jerome’s reports contain misrepresentations. There is no allegation that Jerome was aware of Lambert’s security interest when it entered into a contract with Fall River Five or that it became aware of that security interest at any time before issuance of its reports.
Lambert is not within a class of persons whom Jerome, an appraisal company hired by the bank, would have reason to expect to act or to refrain from acting in reliance upon its reports. It is not alleged that Lambert had any kind of direct contact with Jerome. The parties were not engaged in more than a minor or insignificant relationship. Standard Register Co., supra. Finally, the only alleged “loss of money or property” flowing from Jerome’s alleged misrepresentations is the payment of $24,347 of Fall River Five’s money to Puritan.
ORDER
For the foregoing reasons, it is hereby ORDERED that Puritan’s motion to dismiss Count Two of the Complaint and Jerome’s motion to dismiss Count Four of the Complaint are ALLOWED.

The court has not considered the extraneous materials submitted in connection with the motion to dismiss and does not treat the motions as ones for summary judgment.

Massachusetts has adopted Restatement (Second) of Contracts §302 for determining whether a plaintiff is an intended third-party beneficiary. Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982). That section provides:
(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary: or
(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.