Fremont-Smith, J.
Plaintiffs seek damages arising out of their $136.5 million loan to the Atlanta-based owners of the Ritz-Carlton hotel in Boston, which loan is now in default. Plaintiffs claim that they made their decision to provide financing to the hotel in reliance on an appraisal report prepared by defendants Kenneth Leventhal & Co. (Leventhal) and Leventhal partner Peter T. Capobianco that misrepresented the value of the hotel as $165 million. Defendants now move for summary judgment on the misrepresentation and G.L.c. 93A claims. For the following reasons, defendants’ motion is DENIED.
BACKGROUND
In November 1989, Leventhal was retained by the Ritz-Carlton Hotel Company to prepare an appraisal report on the Boston Ritz-Carlton hotel. Leventhal conducted fieldwork in Boston through November 20, 1989, and prepared and submitted a 97-page report (the Report) entitled “Market Study and Valuation Estimate.” In the cover letter accompanying the Report, Leventhal confirmed that the “report maybe used in support of an application for securing refinancing of the Ritz-Carlton, Boston.” On the first page of the Report, under the heading “Summary of Salient Facts and Conclusions,” is the conclusion that the value of the hotel, as of November 20, 1989, was $165 million.
Plaintiffs are the Tanakas and three corporations (two Japanese and one U.S.) that are controlled by the Tanakas and their children. In December 1989, plaintiffs, through the U.S. corporation, Manhattan Tops USA, Inc., loaned $136.5 million to the owners of the Boston Ritz-Carlton, with the hotel as security for the loan. As a condition of the loan, the hotel owners were to provide an appraisal report demonstrating that the fair market value of the hotel was at least $ 150 million. Before the loan closing, the hotel owners provided a copy of the Leventhal Report to plaintiffs’ attorneys and financial advisors. Although plaintiffs did not read the Report before the closing, Leventhal’s conclusions regarding the value of the hotel were conveyed to them by their representatives. The loan closed in December 1989, and some two years later, in late 1991, the hotel owners defaulted on the loan.
DISCUSSION
This court will grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). A moving party who does not bear the burden *701 of proof at trial must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles them to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). This may be done either by submitting affirmative evidence negating an essential element of the opposing party’s case or by showing that the opposing party is unlikely to submit proof of that element at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, supra at 17.
I. Trade or commerce.
Defendants first assert that they are entitled to judgment as a matter of law because it is undisputed that the plaintiffs had not previously engaged in commercial lending, and “[i]n making a private investment in the loan transaction, plaintiffs were acting outside the scope of their business activities.” Accordingly, defendants argue, because plaintiffs were not engaged in “trade or commerce” for purposes of the loan transaction, they are not entitled to bring an action under G.L.c. 93A, §11. Further, defendants maintain, because plaintiffs failed to send a written demand prior to bringing this action, they may not proceed under c. 93A, §9.
Section 11, however, does not require that a commercial transaction take place only in the ordinary course of a person’s business or occupation. The question is, rather, whether or not a person’s participation in a loan transaction is in the nature of a private investment or takes place in a “business context,” as determined from the circumstances of each case; Shawmut Community Bank v. Zagami, 411 Mass. 807, 808 (1992); Begelfer v. Najarian, 381 Mass. 177, 191 (1980). In making this determination, a court should consider the character of the party, the nature of the transaction, the activities engaged in by the party, and whether the transaction was motivated by business or personal reasons. Begelfer, supra at 191; Poznik v. Massachusetts Medical Professional Insurance Association, 417 Mass. 48, 52 (1994). Finally, whether a plaintiff was engaged in trade or commerce is ordinarily a question for the trier of fact. Brown v. Gerstein, 17 Mass.App.Ct. 558, 570-71 (1984).
Defendants here have failed to meet their burden affirmatively to demonstrate the absence of a triable issue. Plaintiffs have identified specific facts in the summary judgment record upon which a jury could find that plaintiffs consist of two individuals and three business corporations which were motivated by business reasons to engage in a complicated refinancing transaction the object of which was to loan $136.5 million to the owners of a commercial enterprise. In short, there is at least an issue of a material fact whether some or all of the plaintiffs were engaged in trade or commerce.[3]
II. Primarily and substantially in Massachus etts.
Defendants next argue that they are exempt from the provisions of c. 93A because the underlying “actions and transactions” did not occur “primarily and substantially” in Massachusetts, as required for jurisdiction under G.L.c. 93A, §3(l)(b). See Burnham v. Mark IV Homes, Inc., 387 Mass. 575, 580 (1982); Bushkin Associates, Inc. v. Raytheon Co., 393 Mass. 622, 637-639 (1985). Defendants bear the burden of proving this exemption. G.L.c. 93A, §3(2); Burnham at 579, n.8; Bushkin at 638.
Although the Supreme Judicial Court has not fully articulated each factor which may be considered in making a “primarily and substantially” determination, see Burnham supra at 580, n.9, the inquiry should at least focus, in the context of the overall transaction, on whether the conduct said to have offended the statute and to have caused plaintiffs’ injury, occurred in Massachusetts. Makino, U.S.A., Inc. v. Metlife Capital Credit Corp., 25 Mass.App.Ct. 302, 311, review denied, 402 Mass. 1101, (1988). The Court must determine, then, the geographic location where defendants participated in the hotel owners’ alleged effort to exaggerate the fair market value of the Ritz-Carlton in Boston, where defendants participated in the alleged misrepresentation of the Ritz-Carlton’s value, and where the plaintiffs suffered resultant injury.
Defendants maintain that the following undisputed facts establish that the underlying “actions and transactions” did not occur “primarily and substantially” in Massachusetts: the Ritz-Carlton Hotel Company engaged Leventhal to prepare the Report from its Atlanta office; Leventhal, which maintained no Massachusetts office, sent the Report from its Los Angeles office to Atlanta; plaintiffs, none of whom are Massachusetts residents, neither saw nor read the Report prior to the loan closing (and only indirectly learned of defendants’ value conclusion); and only one of the plaintiffs actually attended the closing in Boston.
Plaintiffs, however, point out that Leventhal’s appraisers conducted the field work to support the Report, in Boston; the Report and its ultimate value conclusion concerned a Massachusetts property; a copy of the Report, which was a condition of the closing, was transmitted to plaintiffs’ Massachusetts attorney prior to the closing in Boston; the bottom line of the appraisal valuation was communicated to one of the plaintiffs at the closing in Boston, and the entire transaction involved a Boston hotel, in which plaintiffs purchased a 50% ownership of the hotel, as part of the transaction.
Based on the above facts, which are contained in the summary judgment record, the Court concludes that at least a genuine issue of material fact is raised as to whether or not the underlying actions and transaction occurred primarily and substantially in Massachusetts.
*702 III. Parties’ business or contractual relationship and defendants’ “rascality.”
Defendants further seek to avoid c. 93A liability by asserting that no business or contractual relationship existed between the parties, and that their conduct, in any event, did not reach the level of “rascality” necessary to support a c. 93A claim because they maintain that their valuation was done in good faith and “sincere.”
It is true that in Nei v. Boston Survey Consultants, Inc., 388 Mass. 320 (1983), the Supreme Judicial Court declined to impose c. 93A liability on a land surveyor employed by the sellers of land who had merely provided a report of the condition of the property to the sellers and who had no contractual or business relationship with the plaintiff. Here, defendants assert that they similarly did not even know plaintiffs’ identity until after this lawsuit was filed, several years after their Report was provided to the hotel owners.
Privity, however, is not required to maintain a c. 93A action based on misrepresentation “so long as the parties are engaged in more than a minor or insignificant business relationship,” Standard Register Co. v. Bolton-Emerson, Inc., 38 Mass.App.Ct. 545, 551 (1995).
In Nei, not only did the surveyor have no business or contractual relationship with the plaintiffs (a factor which the Court found to be only “somewhat significant,” id. 324-25) but the surveyor had made no alleged misstatements to anyone, and his report of the tests conducted on the property was accurate. Id. at 324. The Court merely “decline[d] to impose a risk of liability under G.L.c. 93A to some prospective purchaser of land because an accurate statement of soil tests given to the owner of the property did not also contain, and was not followed by, an explanation of the test results.” Id. at 324-25.
The facts of this case, however, are quite different. Here, plaintiffs allege that defendants did make misstatements (i.e., an inaccurate and misleading Report). Here, moreover, there is evidence upon which it could be found that defendants intended potential investors, such as the plaintiffs, to be apprised of the “bottom line” and to rely on their bottom line valuation. The cover letter to the Report itself indicates that it was contemplated to be used in support of an application for securing financing for the Boston Ritz-Carlton.
Moreover, Judge Flannery noted in his Memorandum and Order on defendants’ motion to dismiss, see Manhattan Tops, USA, Inc. v. Kenneth Leventhal & Co., Civil No. 92-7766-J (Suffolk Super. Ct. September 16, 1993) at 2, that Leventhal “is a partnership of certified public accountants which was retained to do a market study and evaluation estimate. The defendants are professional advisers who have superior knowledge in giving appraisals because of their training, skill, and job status” and concluded that defendants may be liable for their misrepresentations if plaintiffs’ reliance was reasonably foreseeable. Id. at 3-4. Accordingly, the Court concludes that there is, at the very least, a genuine issue of material fact as to the existence of an intended, albeit somewhat indirect, business relationship between themselves and potential investors in the hotel.
Furthermore, the Supreme Judicial Court has indicated that, in determining what conduct was unfair or deceptive, the focus should be on the crucial factors of “the nature of the challenged conduct and on the purpose and effect of that conduct.” Massachusetts Employees Ins. Exchange v. Propac-Mass, Inc., 420 Mass. 39, 42 (1995). Defendants’ assertion that their valuation estimate was “sincere” is merely conclusion-ary and hence insufficient to demonstrate the absence of a triable issue in this regard.
IV. Misrepresentation claim.
Defendants repeat, in connection with the fraud count, that plaintiffs were not foreseeable recipients of the Report and so were not within the scope of those who might foreseeably be injured by any misrepresentation. Further, defendants argue that plaintiffs did not reasonably rely on the Report, since they never read it before deciding to make the loan, but only relied upon a third party’s summary of the Report at the closing. Defendants also point out that the Report specifies it is to be shown only in its entirely and only to lending institutions.
As discussed in Part III, above, however, a genuine issue of material fact exists as to whether plaintiffs were within the class of persons who would foreseably rely on the defendants’ appraisal figure. In this regard, the final paragraph of the defendants’ two-page cover letter to the Report acknowledged that “this report may be used in support of an application for securing refinancing of the Ritz-Carlton, Boston.” Nor can it be said that plaintiffs reliance only on defendants’ bottom-line valuation of $165 million, without reading the entire report, was unreasonable as a matter of law, in view of its being conspicuously set forth on the first page of the voluminous 97 page Report entitled “Summary of Salient Facts and Conclusions.” The situation is thus entirely dissimilar from that presented in the cases cited by defendants.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motion for summary judgment is DENIED.

In Shawmut Community Bank v. Zagami, supra, the counterclaim plaintiff was, by trade, a plumber who had, it was not disputed, borrowed and invested money in am individual, non-corporate capacity, and not in connection with his trade or business, but in order to make a private investment. Here, on the other hand, a jury could find that plaintiffs are three business corporations, as well as two individuals, which borrowed money and invested it as part of a business transaction.