Doerfer, J.
INTRODUCTION
The present action arises out of the dumping of construction debris containing vinyl asbestos tile at *518 Ternberry Estates, a residential development in Shrewsbury, in violation of the Solid Waste Disposal Act. Homart Development Corporation, which generated the debris in the course of demolishing and redeveloping the Natick Mall, entered into a Consent Judgment with the Commonwealth and paid a $200,000 civil penalty. Homart now seeks indemnification and/or contribution in that amount plus the amount expended to clean up the property, as well as damages for an alleged violation of Chapter 93A, from third-party defendant Ternberry Development Corporation, the developer ofTernberry Estates. This matter is before the court on Ternberry Development Corporation’s motion to dismiss the second amended third-party complaint pursuant to Mass.R.Civ.P. 12(b)(6). For the reasons discussed below, Ternberry’s motion to dismiss is ALLOWED as to Count XIX and Count XXI but DENIED as to Count XX. With respect to Count XXII, the motion is ALLOWED in part and DENIED in part.
BACKGROUND
The Commonwealth commenced this action in April of 1995 against Homart Development Co. (Homart) and its demolition contractors, Walsh Brothers (Walsh) and Gabe & Sons, Inc. (G&S) seeking civil penalties for violations of the Solid Waste Disposal Act and Clean Air Act.[3] The alleged violations of the Solid Waste Disposal Act arose from the illegal dumping of asbestos-laced construction debris at Temberiy Estates, a residential development in Shrewsbury developed by Ternberry Development Corporation (Ternberry). Homart generated the debris in the course of demolishing and redeveloping the Natick Mall. In November of 1993, either Ternberry or its general contractor purchased the asbestos-laced debris from Konan Trucking (Konan), a subcontractor working on the Natick Mall project. Konan transported the debris to Ternberry Estates, where it was crushed and used as landfill at the site of the future residential development.
Upon learning that asbestos-laced debris from the Natick Mall had been disposed of at Ternberry Estates, Homart voluntarily arranged for the debris to be removed from the Shrewsbury site and properly disposed of at its own cost. Homart then filed a third-party complaint against numerous parties, including Ternberry, to recover the cost of cleaning up Ternberry Estates as well as any fines which it might incur as a result of violations of the Solid Waste Disposal Act. Homart alleged five claims against Ternberry: negligence in Count XVII, violation of Chapter 93A in Count XIX, indemnification in Count XX, contribution under Chapter 23IB in Count XX3, and contribution under Chapter 2IE in Count XXII. In September of 1995, Ternberry moved to dismiss all five counts: while this motion was pending, however, Homart entered into a Consent Judgment with the Commonwealth, dated January 18, 1996, in which it agreed to pay a civil penalty of $200,000 in full and final settlement of all the Commonwealth’s allegations arising out of the disposal of the Natick Mall debris at Ternberry Estates. Homart paid the full amount of the penalty on February 1, 1996.
Thereafter, in a Memorandum of Decision and Order dated March 18, 1996, this Court (Botsford, J.) dismissed Homart’s negligence claim against Ternberry, but granted Homart leave to amend its contribution and indemnification claims against Ternberry to reflect its settlement with the Commonwealth, and to amend its Chapter 93A claim to more clearly present the factual basis for such a claim. Ternberry now moves the court to dismiss the second amended third-party complaint on the ground that Homart cannot recover under Chapter 93A as a matter of law because the requisite business or transactional relationship is lacking. Ternberry further contends that Homart fails to state a claim for contribution under Chapter 23IB because Homart and Ternberry are not joint tortfeasors with respect to the Commonwealth, given that the Commonwealth recovered only a civil penalty and not compensation for personal or property damage from Homart. In addition, Ternberry contends that Homart fails to state a common law claim for indemnification because Homart’s liability was not derivative or vicarious, Homart was not wholly and substantially without fault, and Homart does not allege a substantially differing degree of fault between itself and Ternberry. Finally, Ternberry contends that Homart cannot recover civil penalties under Chapter 21E as a matter of law.
For the purposes of the present motion to dismiss, the following allegations in Homart’s second amended third-party complaint are accepted as true. In connection with the demolition and redevelopment of the Natick Mall, Homart contracted with third-party defendant Konan Trucking, Inc. (Konan) to arrange for the transport of the demolition debris to a legal disposal site. In violation of this contractual obligation, Konan arranged with third-party defendant Caruso Trucking for more than eighty truckloads of asbestos-laced debris to be dumped at Ternberry Estates. Ternberry Development Corporation, as owner and operator of Ternberry Estates, knowingly and intentionally purchased this debris, at a cost less expensive than legal fill material, crushed it and then distributed around homes at the site of its residential development. Ternberry thus benefitted financially from the use of the asbestos-laced debris while knowing that such use would subject the generator of the debris, Homart, to legal liability.
DISCUSSION
When the court considers a motion to dismiss for failure to state a claim upon which relief can be granted, all well-plead allegations in the complaint are to be taken as true, and the plaintiff is entitled to all favorable inferences to be drawn therefrom. Nader v. *519 Citron, 372 Mass. 96, 98 (1977); General Motors Acceptance Corp. v. Abington Casualty Insurance Co., 413 Mass. 583, 584 (1992). A Rule 12(b)(6) motion should not be allowed unless it is shown beyond doubt that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. Spinner v. Nutt, 417 Mass. 549, 550 (1994); Romano v. Sacknoff, 4 Mass.App.Ct. 862, 862 (1976).
I. Count XIX; Violation of Chapter 93A
Massachusetts General Laws Chapter 93A, §11 provides a cause of action to:
[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive practice . . . G.L.c. 93A, §11 (19 — ).
Homart asserts that this statute does not require a business relationship between the parties, so long as there is a causal connection between the defendant’s conduct and the damage to the plaintiff. Tembeny contends, however, that Chapter 93A does not regulate conduct in the absence of a business relationship between the parties.
It is well established that parties need not be in contractual privity in order for their actions to come within the regulatory ambit of G.L.c. 93A, §2. Chestnut Hill Development Corp. v. Otis Elevator Co., 653 F.Supp. 927, 933 (D.Mass. 1987). Privily is not required to maintain a non-warranty based action under c. 93A, so long as the parties are engaged in more than a minor or insignificant business relationship. Standard Register Co. v. Bolton-Emerson, Inc., 38 Mass.App.Ct. 545, 551 (1995). Thus, it is significant for purposes of liability under c. 93A that a plaintiff had no contractual or business relationship with the defendant. Nei v. Boston Survey Consultants, Inc., 388 Mass. 320, 324 (1983) (finding that a land surveyor, hired by the seller of a property, was not liable under c. 93A to the buyer for failure to disclose high water ground table).
Federal courts considering Chapter 93A liability in the context of environmental contamination of property have concluded that there must be some transactional relationship between the plaintiff and defendant in order to state a claim for unfair or deceptive practices. For example, in Cash Energy, Inc. v. Weiner, the plaintiffs were the owners of a condominium development which was contaminated as a result of the defendant’s storage and transfer of chemical solvents on an adjacent property. 763 F.Supp. 892, 893 (D.Mass. 1991). In dismissing the plaintiffs’ claim under c. 93A, the court noted that both the history and development of the statute suggest that it was enacted to protect consumers and business entities against unfair acts and practices in transactions between them. Id. at 894. The court further opined that an expansive reading of Chapter 93A to permit liability in the absence of some business relationship between the parties “tests the limits of common sense.” Id.
Similarly, in John Boyd Co. v. Boston Gas Co., the plaintiffs brought c. 93A claims against the former owners of their properties alleging that waste materials from the past operation of a coal gasification plant on the site had contaminated the properties.- 775 F.Supp. 435, 436 (D.Mass. 1991). The former owners, however, never had any dealings, either direct or indirect, with the plaintiffs concerning their acquisition of the lots at issue, since there had been several intervening owners. Id. at 436-37. The court thus dismissed the 93A counts for failure to state a claim, concluding that “although the Supreme Judicial Court has yet to define the outer limits of the relationship required under Chapter 93A, some business connection between the parties is an essential element of liability under the statute.” Id. at 440.
Further, several Superior Court cases have adopted the principle that there must be some transactional relationship between the parties in order to sustain a claim under Chapter 93A. See; Redstone v. Signore, Civil No. 924190, 4 Mass. L. Rptr. 469 (Middlesex Super. Ct. Dec. 8, 1995) (concluding that a property owner whose land was allegedly contaminated by leaking storage tanks on defendant’s abutting property failed to state a claim under c. 93A where there was no commercial relationship between plaintiff and defendant); Camacho v. Basteri, Civil No. 952335, 4 Mass. L. Rptr. 490 (Middlesex Super. Ct. Dec. 28, 1995) (concluding that plaintiffs who alleged damages from the operation of a dog kennel across the street from their property failed to state a claim under c. 93A where they did not identify any transaction between themselves and the defendant kennel operator); Lambert v. Fall River Five Cent Savings Bank, Civil No. 9401521, 3 Mass. L. Rptr. 633 (Bristol Super. Ct. May 1, 1995) (concluding that a second mortgagee failed to state a claim against an appraisal company hired by the first mortgagee to inspect and repair the property because there was no business relationship between the second mortgagee and the appraisal company); Compare Manhattan Tops, USA, Inc. v. Leventhal & Co., Civil No. 97766A, 4 Mass. L. Rptr. 700 (Suffolk Super. Ct. Dec. 1995) (concluding that lender stated a c. 93A claim against an appraisal company hired by the seller of a property, where although the lender and appraisal company did not have a direct business relationship, the appraisal company intended potential investors such as the plaintiff to rely on its inaccurate report).
Nonetheless, Homart contends that a claim under c. 93A, §11 may be maintained in the absence of a business relationship between the parties where the plaintiffs loss is causally connected to the defendant’s conduct, citing Hays v. Mobil Oil Corp., 930 F.2d 96 *520 (1st Cir. 1991). In that case the plaintiff, the owner of contaminated property on which a gas station franchise had operated, sued the franchisor to recover the costs of cleaning up the contamination. Id. at 99. The plaintiff had operated the gas station franchise under an agreement which provided that the franchisor, who owned the underground gasoline storage tanks on the property, was required to maintain those tanks. Id. At one point, the plaintiff informed the franchisor that the tank was leaking waste oil onto the property, and the franchisor took corrective action. Id. Thereafter, the plaintiff retired and leased the gas station to a former employee who continued to operate it as a franchise.
The franchisor then sold the underground storage tanks and related equipment to the lessee for the sum of $26.25. Id. Six years later, after operation of the gas station had ceased, the plaintiff was required to spend in excess of $93,000 to remedy the extensive contamination of the property: however, the franchisor refused to help pay for the clean-up on the ground that it no longer owned the storage tanks. Id. at 99. The plaintiff thus sued the franchisor under c. 93A alleging that the sale of the tanks for a nominal sum was an unfair and deceptive act undertaken to avoid its environmental liability. The court dismissed the 93A claim on the ground that it was time-barred Id. at 99-100. This Court is of the opinion that the Hays case does not aid Homart in its attempt to hold Temberry liable under Chapter 93A despite the absence of a business relationship between them, since the plaintiff and defendant in Hays at least had at least some transactional relationship with respect to the franchise.[4]
Finally, Homart cites Quincy Cablesystems, Inc. v. Sully’s Bar, Inc., a case in which the owner/operator of a cable television system and transmitter of sports programs sued tavern owners under c. 93A for the unauthorized interception of its unencrypted satellite signal. 684 F.Supp. 1138, 1139 (D.Mass. 1988). Without addressing the relationship between the parties, or lack thereof, the court concluded that the tavern owners were liable under c. 93A, based on the fact that the theft of cable service deprives the cable industry of revenue and creates an unfair burden on paying cable subscribers. Id. at 1143-44. Homart argues that this case supports a c. 93A claim between parties without any business connection based solely on public policy considerations, and that such considerations are implicated in the present case with respect to environmental contamination via illegal dumping.
However, this Court finds the decisions in Cash Energy, Inc. v. Weiner and John Boyd Co. v. Boston Gas Co., which specifically involve the context of property ownership and environmental contamination, to be well reasoned and persuasive with respect to the present case. Homart had no contractual or other business relationship with Temberry, and the fact that waste generated by Homart ended up on land owned by Tembeny through the actions of numerous intervening parties does not create such a relationship. Finally, Homart’s inability to sue Temberry under Chapter 93A in no way deprives it of a remedy with respect to the environmental contamination at issue, as evidenced by Homart’s indemnification and or contribution claims. Accordingly, this Court concludes that Homart has failed to state a claim against Temberry under c. 93A, §11, such that Count XIX must be dismissed.
II. Count XX: Common Law Indemnification
Temberry further contends that Homart has failed to state a claim for indemnification at common law. Generally speaking, three sets of circumstances may give rise to a right of common law indemnity: an express contract for indemnification, a contractual right to indemnification implied from the relationship between the parties, and a tort-based right to indemnification. Stewart v. Roy Brothers, 358 Mass. 446, 459 (1970); Great Atlantic & Pacific Tea Co., Inc. v. Vanofsky, 380 Mass. 326, 332-33 (1980); Jones v. Vappi & Co., 28 Mass.App.Ct. 77, 79 (1989); Araujo v. Woods Hole, 693 F.2d 1, 2 (1st Cir. 1982). Homart does not allege the existence of an express contract for indemnification, and the absence of any transactional relationship between Homart and Temberry precludes the finding of an implied contractual right to indemnity.
The general rule for tort-based indemnification is that indemnity is permitted where one party does not join in the negligent act but is exposed to derivative or vicarious liability for the wrongful act of another. Stewart v. Roy Brothers, supra at 459; Ford v. Flaherty, 364 Mass. 382, 385-86 (1973); Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A., 395 Mass. 366, 369 (1985). Courts have indicated, however, that in rare cases, the fault of one joint tortfeasor may be so slight as to grant it rights of indemnity against another joint tortfeasor. Gray v. Boston Gas Light Co., 114 Mass. 149, 154 (1873); Boston Woven Hose & Rubber Co. v. Kendall, 178 Mass. 232, 236-37 (1901); Hollywood Barbecue Co. v. Morse, 314 Mass. 368, 370 (1943); Economy Engineering Co. v. Commonwealth, 413 Mass. 791, 794 (1992). However, no instructive general mle can be stated as to when a negligent tortfeasor will be allowed indemnity, other than that the indemnitee’s fault must be “insignificant in relation to that of the indemnitor.” Rathburn v. Western Massachusetts Electric Co., 395 Mass. 361, 364 (1985).
Homart alleges that it had no involvement in or responsibility for the deposit of the asbestos-laced debris at Temberry Estates, but that Temberry knowingly purchased and utilized said debris as landfill at a financial profit. While the circumstances under which a negligent party may recover indemnification from a joint tortfeasor are indeed rare, this Court cannot say beyond doubt, based solely on the pleadings, that Homart is not entitled to relief under such *521 a theory. Accordingly, Homart’s motion to dismiss Count XX of the second amended third-party complaint must be denied.
III. Count XXI: Contribution Pursuant to Chapter 23IB
Massachusetts General Laws Chapter 23 IB, Section 1(a) provides:
Except as otherwise provided in this chapter, where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them. G.L.c. 231B, §l(a) (1986).
Ternberry contends that Homart fails to state a claim for contribution under this statute because the Commonwealth did not sue Homart in tort, but rather, under G.L.c. Ill, §150A.
The term “liable in tort” as used in § 1(a) to create and define the statutory right of contribution is broad in scope. Hayon v. Coca Cola Bottling Co. of New England, 375 Mass. 644, 649 (1978); Wolfe v. Ford Motor Co., 386 Mass. 95, 98 (1982). It cannot be said that statutory causes of action created by the Legislature categorically are not tort actions for purposes of contribution. Ankiewicz v. Kinder, 408 Mass. 792, 795 (1990). Rather, the key to defining whether a particular claim sounds in tort is the substantive quality of the claim. Hayon v. Coca Cola Bottling Co. of New England, supra at 649; Ankiewicz v. Kinder, supra at 795. A tort is a civil wrong other than breach of contract, for which the law provides a remedy. Ankiewicz v. Kinder, supra at 795. Further, all torts share the elements of duly, breach of that duly, and damages arising from the breach. Id.
Upon consideration of these factors, the court has concluded that the substantive nature of a claim under the Lead Poisoning Prevention Act, G.L.c. Ill, §§190-199A, sounds in tort and is within the ambit of the contribution statute, c. 231B, §l(a). Id. In addition, the court has concluded that a claim for breach of the implied warranty of merchantability under G.L.c. 106, §§2-314 and 2-318 sounds in tort for purposes of the right to statutory contribution. Wolfe v. Ford Motor Co., 386 Mass. 95, 100 (1982).
The Lead Poisoning Prevention Act states, “(t]he owner of any premises shall be liable for all damages to a child under six years of age at the time of poisoning . . . that are caused by his failure to comply with the provisions and requirements of [this statute] and regulations pursuant to said provisions.” G.L.c. Ill, §199(a) (1995). Thus, the statute explicitly establishes that a duty of care, compliance with its regulatory provisions, is owed to private individuals other than the government and that a breach of this duly will give rise to a private remedy in the form of an action for damages. Similarly, Chapter 106, §2-318 states, “[l]ack of privity between plaintiff and defendant shall be no defense to any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied.” G.L.c. 106, §2-318 (1984).
In contrast, the Solid Waste Disposal Act neither creates a general duty of care nor provides for a damages remedy. The Act states, “No person shall dispose or contract for the disposal of solid waste at any place which has not been approved by the department pursuant to the provisions of this section or applicable law.” G.L.c. Ill, §150A (1995). While this provision could be deemed to create a duly of compliance, such duty is owed only to the Commonwealth and not to any private individuals. Further, the Act states:
Any person . . . who violates this section, or any order issued pursuant thereto, or any rule or regulation promulgated hereunder (1) shall be subject to a fine of not more than twenty-five thousand dollars, or by imprisonment for not more than two years in a house of correction, or both, for such violation; or (2) shall be subject to a civil penally not to exceed twenty-five thousand dollars for each such violation. G.L.c. Ill, §150A (1995).
Thus, breach of this statutory duty does not give rise to a general tort-like remedy of compensatory damages but rather, criminal and civil penalties designed to deter and punish violations of the Act. Damages under § 150A thus are unrelated to any actual injury suffered by the Commonwealth.[5] Indeed, the Commonwealth’s authority to recover compensatory damages for the costs of cleaning up pollution from a solid waste facility[6] is found not at Chapter 111, Section 150A, but at Chapter 21H Section 4. See G.L.c. 21H, §4(e) (1996).
In this respect, c. Ill, §150A is similar to the former version of the wrongful death statute, G.L.c. 229, §5, which was regarded as punitive because damages thereunder were fixed at a minimum of $500 and maximum of $10,000, with the amount in any given case to be assessed with reference to the defendant’s culpability rather than with reference to compensating the surviving relatives. Boott Mills v. Boston & Maine Railroad, 218 Mass. 582, 584-85 (1914); Porter v. Sorell, 280 Mass. 457, 460-63 (1932). Because damages under this statute were punitive rather than compensatory in nature, a defendant punished by paying the amount of a verdict against him had no right to contribution from a join tortfeasor. Boott Mills v. Boston & Maine Railroad, supra at 591; Porter v. Sorell, supra at 465.
The substantive quality of a claim under the Solid Waste Disposal Act is different than that of claims under the Lead Poisoning Prevéntion Act or §2-318 of the UCC, which have been deemed to sound in tort. This Court concludes that the Commonwealth’s claim against Homart pursuant to G.L.c. Ill, §150A does not sound in tort for the purposes of contribution *522 under Chapter 23 IB, such that Homart and Temberry are not “jointly liable in tort” within the meaning of Section 1(a) of that statute. Accordingly, Homart has failed to state a claim for contribution pursuant to G.L.c. 23 IB and Count XXII must be dismissed.
IV. Count XXII: Reimbursement Pursuant to c. 2IE, §§4 & 4A
Finally, Temberiy moves to dismiss Count XXII insofar as Homart seeks to recover an equitable share of the $200,000 civil penally paid to the Commonwealth. General Laws Chapter 21E Section 4 provides in relevant part:
Any person who undertakes a necessary and appropriate response action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such response action ... All claims and actions for contribution, reimbursement or equitable share by persons other than the commonwealth pursuant to this paragraph . . . shall be subject to, and brought in accordance with, the procedures set forth in Section four A. G.L.c. 21E, §4 (1996).
Section 4A provides:
Any person other than the department who has undertaken, is undertaking, or intends to undertake a necessary and appropriate response action or who is or reasonably believes that he might be liable pursuant to Section five may notify any person he reasonably believes is liable pursuant to Section five that the response action has been taken or of the notifier’s intent to take such response action or to seek contribution, reimbursement or equitable share from other persons, and that the notifier requests the person to whom the notice is being sent to . . . make contribution or reimbursement or pay its equitable share of the costs of such response action or other liability pursuant to the provisions of this chapter . . . Said notice shall. . . identify and describe the response action that has been, is being, or is intended to be undertaken . . . and the nature and amount of actual or potential liability pursuant to the provisions of this chapter. G.L.c. 21E, §4A(a) (1996) (emphasis added).
Notwithstanding Homart’s argument that the civil penalty it paid to the Commonwealth was a foreseeable consequence of Ternberiy’s accepting the contaminated debris for use as landfill on its property, the express language of §4A restricts the statutory right to reimbursement to those costs incurred pursuant to Chapter 2IE. This language would thus encompass expenses such as response costs under §4, damage to real or personal property under §5, injury to natural resources under §5 and presumably, civil penalties under §11.
Nonetheless, Homart’s liability for the civil penalty in the present case was not incurred pursuant to c. 2IE, §11 but rather, pursuant to the Solid Waste Disposal Act, G.L.c. Ill, §150A. As such, it was not “a liability pursuant to the provisions of this chapter” and is not a cost for which reimbursement may be sought under Chapter 2 IE, §4A. Accordingly, Ternberry is entitled to have CountXXII dismissed insofar as it seeks to recover reimbursement for any civil penalties paid by Homart pursuant to c. Ill, §150A.
ORDER
For the foregoing reasons, it is hereby ORDERED that Temberry’s motion to dismiss be ALLOWED as to Counts X3X and XXI of the second amended third-party complaint, but DENIED as to Count XX. It is further ORDERED that the motion to dismiss Count XXII be ALLOWED insofar as that count seeks reimbursement for civil penalties incurred by Homart Development Corporation pursuant to G.L.c. Ill, § 150A, but DENIED in all other respects.

Homart’s violations of the Massachusetts Clean Air Act, G.L.c. Ill, §142A-D, arose from the unrelated removal of asbestos-containing material at Shopper’s World and the General Cinema Complex in Framingham, and are not at issue for purposes of this motion.

Similarly, another case cited by Homart, Dahlborg v. Midleborough Trust Co., is inapposite because the 93A plaintiff had a depositor relationship with the defendant bank. In Dahlborg, the plaintiff, the beneficiary of a trust, sued the bank for unfair practices under c. 93A because the bank had allowed the trustee to withdraw funds from the trust’s bank account and use them to pay off the trustee’s personal indebtedness to the bank. 16 Mass.App.Ct. 481, 483 (1983).

Contrary to Homart's assertion, Manchester v. Department of Environmental Quality Engineering does not support the proposition that G.L.c. Ill, §150A authorizes the Commonwealth to seek compensatory damages for injury to property. Rather, Manchester concluded that where a defendant is held in civil contempt for failure to comply with an Order by the Commonwealth pursuant to c. Ill, §150A, the fine recovered by the Commonwealth for that contempt cannot exceed the actual damage to the Commonwealth caused by the violation of its order. Manchester v. Department of Environmental Quality Engineering, 381 Mass. 208, 215 (1980). It appears that the fine in that case was sought under general principles of contempt rather than under the provision of c. Ill, §150A providing for a fine of up to $25,000 for failure to comply with regulatory requirements.

“Facility” is defined as any place or site where solid waste has been or will be deposited, dumped, stored, transferred or treated, and thus would include Temberry Estates in the present case. G.L.c. 21H, §2 (1996).

Caruso Trucking; R.J. Cincotta Co., Inc.; Temberry Development Corporation; GTE; and John Does 1 through 5.